## FOSTER V. THE TRUSTEES OF THE ATHENÆUM.

1. The vendor of land, has a lien, in Equity, on the land sold for the unpaid purchase money, where he has not taken personal security for its payment, or a distinct collateral security as a pledge or mortgage.

2. A surety paying a debt, stands in the place of the creditor, and is entitled to the benefit of all securities which the creditor had for the payment of his debt. But he can not assert a lien, in virtue of the instrument on which he is surety, as that becomes *functus officio*, by the payment of the debt secured by it.

3. A surety of a vendee, who is compelled to pay the purchase money, has no lien in equity upon the land.

4. If one purchase lands with his own money, in the name of another, a trust will, in general, result in favor of him who advances the money; but this presumption may be repelled, by the circumstances of the case, and is confined to those cases where the money is advanced at the time of the purchase.

5. A number of gentlemen associated themselves together, to establish a female school, of which one W was the nominal head; and purchased a house for the contemplated school, of D, at the price of six thousand dollars; of which sum two thousand dollars was paid down, in the funds of the association, and the residue secured, to be paid by two bills of exchange, drawn by one L on W, and by him accepted. The bills were payable to, and endorsed by one H to F, by him to R S F, and by him to D, the vendor of the land, who thereupon conveyed, the premises to W. The company were afterwards incorporated, and the first bill which fell due, was paid with the funds of the corporation. Afterwards, W conveyed the property to the corporation, taking from four persons, (F being one) who describe themselves as trustees of the corporation, a covenant to indemnify him from liability on his acceptance of the last bill of exchange. F was sued on the bill as endorser, and compelled to pay it, and filed his bill asserting a lien in Equity, on the house purchased from D, to the extent of the sum paid by him. in preference to certain creditors of the corporation, who had obtained from it a deed of trust on the house, with notice of his lien: *Held*: First. That F was a mere surety for the corporation, and that the payment by him of a part of the purchase money, gave him no lien on the land. Second. That neither D nor W had any lien in Equity, on the land to which F could be subrogated,—admitting he had such a right—That D had no such lien, because he had taken the security of two persons for the payment of a part of the purchase money who were not members of the corporation : and that although W could not have been compelled to make title to the company until they had paid the purchase money for which he was bound, he had voluntarily relinquished this advantage, on being indemnified by F and others, and could not be permitted afterwards to assert it.

Error to the Chancery Court at Tuskaloosa.

THIS was a bill in Chancery, filed by the plaintiff in error, against the defendants in error.

The bill charges, that in the early part of the year, 1836, a Stock Company was formed in Tuskaloosa, for the purpose of establishing a female school; that Alva Woods, was President of the Board of Trustees of said association. That Woods, with their knowledge, and approbation, and for the purpose of obtaining a suitable building for the purposes of the institution, bought of John R. Drish, the premises, in the bill described, at the price of six thousand dollars. That two thousand dollars was paid down, and the residue of the purchase money was secured by two bills of exchange, drawn by one Joseph Lacy, on, and accepted by said Woods, payable to Chapman A. Hester, by him indorsed to complainant, by him to R. S. Foster, and by him to the vendor. The first bill, payable about a year after its date, and the latter for twenty-three hundred and twenty dollars, seven hundred and thirty days after date, negotiable and payable at the Branch Bank at Mobile.

The bill further charges that the trustees of the company, viz: Alva Woods, and others, were afterwards, and on the 23d of December, 1836, incorporated by the name and style of the " Trustees of the Alabama Female Athenæum," with the power to purchase and hold real estate, &c.; that said trustees organized themselves as a body politic, and under their charter established a female school, the present " Athenæum" in the premises so purchased as aforesaid, which is still occupied for that purpose. The bill charges that the purchase of the house was not made for the benefit of Woods, but for the company, and that the cash payment and the first of the bills of exchange were paid out of its funds. That on the first of March, 1837, Woods, who had previously received a deed from Drish, by deed of that date, conveyed the premises to the corporation. That no consideration whatever, was paid to said Woods, and that the trustees, complainant being one, executed to him an instrument in writing, to indemnify him against his acceptance of the last bill of exchange, as follows:

" STATE OF ALABAMA,
*Tuskaloosa County.*

Whereas, Alva Woods has become the acceptor of a bill of exchange for two thousand three hundred and twenty dollars, which is held by John R. Drish, due on the first day of May, 1838, which was given for the purchase of the premises where

the Alabama Female Athenæum now stands; and whereas his becoming acceptor on said bill, was for the benefit of said institution, and not for his own individual advantage; therefore, we the undersigned trustees of said institution, do hereby oblige ourselves to release the said Alva Woods from any liability on said bill of exchange whatever; and that we will make arrangements to take up said bill, so that said Woods shall in no wise be troubled or called on for its payment, and will indemnify him from any damage he might sustain on said bill; given under our hands and seals, this 5th day of May, 1837.

JAMES H. DE VOTIE, [Seal.]
C. A. HESTER,        [Seal.]
JAMES FOSTER,   ·    [Seal.]
JOHN A. HODGES.      [Seal.]

The bill charges, that said persons then were the trustees of the said corporation; that the true intent and meaning thereof was, that the purchase was made for the corporation, and not for, or on account of Woods; that the corporation was to pay the bill, and that the intention was, by the said agreement to bind the corporation; but that it did not do so : that it was protested for non payment; that complainant has been sued on it, and has paid it, and the complainant insists, that as this was a part of the purchase money of the premises, that he has in equity, a lien thereon, by way of equitable mortgage, &c.  ·

The bill further states, that after the rendition of judgment against the complainant, the trustees made a deed of trust, by which the premises are conveyed to secure certain creditors of the corporation, and charges that the creditors knew of the said judgment, and that it was for the purchase money of the premises, and therefore cannot be considered *bona fide* mortgagees, without notice, but that their lien must be postponed to that of complainant.

The trustees and creditors are made defendants to the bill.

The Chancellor dismissed the bill for want of equity, from which decree, this writ of error is prosecuted.

PECK, for plaintiff in error, argued that the plaintiff had, in equity, a lien on the premises, for the amount paid by him, it being part of the purchase money.

That if he had no such lien, that then he was entitled to the

benefit of the agreement entered into by De Votie, and others, to indemnify Woods, which can only be made available in equity.

In support of these propositions, he cited 1 Story's Eq. 479; 2 ib. § 1217 to 1240, and Note; 14 Vesey, jr. 159; 3 Mylne & Keene, 183; 6 Vesey, jr. 752; 15 ib. 329; 1 S. & L. 136; 2 & 3 Vesey & Beame, 309.

ELLIS, contra, maintained that Woods was the mere agent of the company, and that although the title in the first instance, was made to Woods, it was in fact, a sale to the company.

That such being the fact, the true question was, whether Drish retained a lien on the property, in equity, for the purchase money. This he insisted was not the case, because Drish took the independent security of third persons, which was a waiver of the equitable lien. He cited, 1 Mason, 192; 2 Wash. 141; 3 Bibb, 183; 4 ib. 13; 1 Paige, 20; 5 Mun. 297; 3 Johns. Chan. 57; 2 Story's Eq. § 1227; 5 Dana, 243.

He also insisted that as Woods retained no lien when he conveyed to the corporation, the covenant was personal; 7 Cranch, 306; 8 Johns. 249; 1 Bland. 105.


ORMOND, J.—The question to be determined in this case, is, what facts and circumstances will give the vendor of land a lien, in equity, for the purchase money unpaid.

It is well settled, both in England and the United States, that the vendor, in the absence of any agreement to the contrary, retains a lien on the land he has sold and conveyed for the unpaid purchase money, and that this lien will be enforced against a subsequent purchaser, with notice. It is also the law of both countries, that merely taking a bond or note for the purchase money, will be no waiver of the lien. How far the taking by the vendor of an independent security for the purchase money will have the effect of discharging the lien, is more a matter of doubt.

In Nairns v. Prowse, 6 Vesey, jr. 752, the Master of the Rolls held, that a mortgage of other property, or a pledge of stock, would be a substitution of the lien. But in Grant v. Mills, 2 Ves. & Beame, 308, Sir William Grant declared, "that the effect of the security of a third person properly so denominated, had never been determined," but he agreed that the opinion ex-

pressed by Lord Redesdale, in Hughes v. Kearney, 1 Scho. & Lefroy, that accepted bills of exchange were not sufficient to destroy the lien, was correct, and so decided. The same decision was made by the Vice Chancellor, in *Exparte*, Peake, 1 Madd. 196.

In the case of Macreth v. Simmons, 15 Vesey, jr. 329, Lord Eldon held, after an elaborate examination of all the cases, that no certain rule was deducible from them, but that each case must rest on its own circumstances, for the evidence of an intention on the part of the vendor, to part with his lien. His language is, " The more modern authorities upon this subject, have brought it to this inconvenient state; that the question is not a dry question upon the fact, whether a security was taken; but it depends upon the circumstances of each case, whether the Court is to infer, that the lien was intended to be reserved; or that credit was given, and exclusively given to the person from whom the other security was taken." See also, Saunders v. Leslie, 2 Ball & Beatie, 264.

On this side of the Atlantic, by a strong and decisive current of authorities, it appears to be settled, that where the vendor takes a distinct and independent security of property, or the responsibility of third persons, the lien on the land is waived. At an early period of our history, the rule is thus explicitly stated by President Pendleton, in Cole v. Scott, 2 Wash. Rep. 141. So also, in Wilson and others v. Graham and others, 5 Munford, 297, it was held, that where a vendor of land, executed a conveyance, and took from the purchaser a bond with surety, the equitable lien was gone, even while the land continued the property of the purchaser. To the same effect, are the cases of Fish v. Howland and others, 1 Paige, 20 ; Cox v. Fenwick, 3 Bibb, 183; and Gilman v. Brown, 1 Mason, 191; afterwards affirmed in the Suprme Court of the U. States, 4 Wheaton, 290.

The last cited case was discussed at great length by Mr. Justice Story, who examines the leading English cases, and successfully combats the opinions advanced by Lord Redesdale and Sir William Grant, that the receipt by the vendor of bills of exchange, accepted by a third person, was not a security, but merely a mode of payment, in cases where land was sold on a credit ; but admits that the presumption of a waiver of the lien might not arise where the payment was to be in cash,

and bills of exchange afterwards taken, which prove unproductive.

It cannot therefore, we think, admit of serious doubt, that the law on this interesting subject ought to be considered as settled, at least in the United States; that where a vendor of land executes a conveyance, and takes personal collateral security, binding others as well as the vendee, as a note with surety; or a collateral security, as a pledge or mortgage, that no lien exists on the land itself. So far as the presumed lien on the land for the purchase money, rests for support, on the supposed intention of the parties, it may be confidently stated that in this State, it rarely, if ever exists, in the contemplation of the parties, where a conveyance of the land is made. A much more just and rational foundation for it, appears to be the principle of equity and natural justice, which forbids one to enjoy the property of another, without compensation, where it can be accomplished without injury to third persons.

We come now to consider the case made by the bill. A number of gentlemen associated themselves together to establish a female school, of which one Alva Woods was the nominal head; a purchase was made of a house for the contemplated school, of John R. Drish, at six thousand dollars, of which sum, two thousand dollars was paid down, in the funds of the company, and the residue secured, to be paid by two bills of exchange, falling due at different times, drawn by one Joseph Lacy, on Woods, and by him accepted. The bills were payable to, and indorsed by one Hester, to the complainant, by him to one Robert S. Foster, and by him to Drish, the vendor, who conveyed the premises to Woods. The company were afterwards incorporated, and the first bill which became due, was paid with the funds of the corporation. On the 1st May, 1837, Woods conveyed the property to the corporation, taking from four persons, the complainant being one, who describe themselves as trustees of the corporation, a covenant, to indemnify him from liability on his acceptance of the last bill of exchange. On this bill, the complainant was sued as indorser, and compelled to pay the amount due thereon, and now by his bill, asserts a lien on the house and lot purchased from Dr. Drish, to the extent of the amount paid by him, in preference to certain creditors who have obtained a deed of trust

from the corporation, on the premises, to secure their debts, with notice, as he alleges, of his lien.

This lien, the counsel for the plaintiff in error maintains, can be supported,

1. On the implied lien of Drish upon the house and lot, for the purchase money, to which right, he insists, the plaintiff, by the actual payment of the money, is substituted.

2. On the equity, which Woods had to retain the title until the bill he had accepted was paid, to which right, by the payment of the money, the complaint is substituted.

3. That the covenant entered into with Woods, guaranteeing the payment of his acceptance, by the corporation, will enure, in equity, to the complainant.

1. The sale made by Dr Drish to the company, was on time. One third part of the purchase money being paid down, and the residue secured by two bills of exchange, having about one and two years to run to maturity, and indorsed by two persons, Lacy and Robert S. Foster, who are not shown to have been members of the corporation, and it is admitted, they were not. It was, therefore, the security of a third person, in addition to that of the vendees, and falls expressly within the principle deduced from the cases in the former part of this opinion, and considered as the settled law of the U. States. This was, on the part of Drish, a waiver of the implied lien, and it will necessarily follow, that the complainant could not, by the payment of the purchase money, be substituted to a lien, which did not exist in the vendor, if it were conceded that the complainant occupied an attitude which, if the lien existed, would enable him to exert it.

2. Can Woods be considered a vendor, in that sense of the term which will draw after it the consequences flowing from that relation, as it respects the *lien* for the purchase money unpaid? The facts show conclusively, that the title was made to him in the first instance, as a *mere trustee.* The company for whose use it was bought, contemplated obtaining an act of incorporation, but was then a mere association of gentlemen, of which Woods, being the nominal head, the title was taken in his name, but the cash payment made at the time, was with the funds of the company. The bill sedulously guards against any other conclusion. After stating facts, from which this re-

sult would follow, it expressly charges " that said purchase was made for the use and benefit of the said corporation, and not for the use and benefit of Woods." It is true, that Woods, by accepting the two bills of exchange, had become responsible for the payment of two thirds of the purchase money, and if he had been compelled to pay it, and had retained the title, a Court of Chancery would not have compelled him to part with the title until he was refunded the money he had paid. But this state of things never existed. The first bill was paid by the corporation, and before the maturity of the last bill, Woods voluntarily conveyed the property to the corporation, receiving at the time, from the complainant and three other persons, a covenant, to indemnify him against his acceptance of the bill yet unpaid. The parties to this covenant, style themselves the trustees of the corporation, and it is alleged in the bill, that the parties to it intended to bind the corporation to indemnify Woods; but no proposition can be plainer than that this is the personal covenant of these parties, and that they are personally responsible upon it. Now, if we consider Woods, as the plaintiff's counsel contends, not a mere trustee, as in fact he was, but the vendor of the land, then, upon the principles laid down in the preceding part of this opinion, his having taken the personal guaranty of the complainant and others, would be a waiver of the implied lien, as that covenant was an independent security beyond, and in addition to the liability of the corporation. It is also supposed, that as the money of the complainant went in part to pay for the land, that a trust results in his favor to the extent of the payment. It is true, that if one purchase lands with his own money, in the name of another, a trust will, in general, result to him, who advances the money. Boyd v. McLean, 1 Johns. C. 582; Sug. on Vend. 414; 2 Story's Eq. 445. But this doctrine is confined to cases where the money is advanced at the time of the purchase. In the language of Chan. Kent, in Bottsford v. Burr, 2 Johns. C. 409, " the trust arises out of the circumstance, that the monies of the real and not the nominal purchaser, formed at the *time*, the consideration of the purchase, and became converted into the land." It has no application, when the money, either in whole or in part, is paid by one as the surety of the vendee. The whole foundation of the rule ceases in such a case, which Mr

Justice Story considers to be "the natural presumption in the absence of all rebutting circumstances, that he who supplies the money, means the purchase to be for his own benefit, rather than for that of another; and that the conveyance in the name of the latter, is a matter of convenience and arrangement for other collateral purposes." See page last cited. In the case of McKay v. Green, 3 Johns. C. 56, Chan. Kent says, "the notion that the plaintiff had an equitable lien on the land, because the note he indorsed was applied in part payment of the purchase money, is entirely without foundation."

Now, what are the facts. On the most favorable hypothesis for the complainant—the one assumed by his counsel—Woods sold the land to the corporation, the money to be paid at a future time to Drish, the first vendor, by the corporation, the complainant, and three other persons, entering into a covenant with him, to save him harmless, from his liability to Drish, for the purchase money unpaid; or in other words, these persons became the sureties of the corporation, for the debt to be paid to Drish, and for which, on his acceptance, Woods was primarily responsible. No ingenuity can avoid the conclusion, that the condition of the complainant was, that of a mere surety of the corporation to Woods, and no authority can be found, that the payment of the money, under such circumstances, creates a lien on the land, for the payment of which, it was made.

With no more propriety can the doctrine of substitution be invoked, in aid of the complainant. That rule is, that a surety paying a debt, shall stand in the place of the creditor, and is entitled to the benefit of all securities which the creditor had for the payment of his debt, from the principal debtor; in a word, he is subrogated to all the rights of the creditor. Craythorne v. Swinburne, 14 Versey Jr. 160; Copis v. Middleton, 1 Turn. & Russ. 224; Hodgson v. Shaw, 3 Mylne & Keene, 183. The surety, however, cannot avail himself of the instrument on which he is a surety, by its payment. By payment it is discharged—it ceases to exist, and the payment will not, even in equity, be considered an assignment—the surety merely becomes the creditor of his principal, to the amount paid for him. That this is the settled law, see the elaborate opinions of Lord Eldon, in the case of Copis v. Middleton, and of Lord Brougham, in the case of Hodgson v. Shaw, previously cited.

The security which the complainant seeks the benefit of, or through which it is supposed his equity may be traced, or derived, by this doctrine of substitution, is the covenant entered into by the complainant and others, to indemnify Woods against his acceptance. But this became *functus officio,* the moment the debt was paid, either by the corporation or by any party to it, and cannot be again resuscitated. The complainant, by paying the debt, has done no more than he had in effect covenanted to do, which will be most obvious, if it be considered that, if he having, as indorser, been compelled to pay the amount of the bill, should sue Woods on his acceptance as a primary liability, this covenant would be a complete answer to the action. This being the case, the authorities above cited, determine beyond doubt, that even if Woods could entitle himself to an equitable lien, through the medium of this covenant, the complainant cannot, because it no longer exists as a security.

There is still another view of this subject, quite as satisfactory perhaps as any yet taken.

It has been already stated as an admitted principle, that if Woods had been compelled to pay his acceptance, before he conveyed the title to the corporation—he could not have been compelled to part with the title until he was refunded the purchase money—not so much on the ground of any specific lien, as because a Court of chancery would not deprive him, a mere surety, of an advantage fairly obtained. Let it now be admitted, that the complainant and the other parties to the bill, who were also sureties, had a right to insist that the title, thus held by Woods, was for the benefit of all the sureties, or of any one who was compelled to pay the debt. Yet this was an advantage which they surely had a right to waive the benefit of. Woods, it appears, insisted on the advantage he had obtained, and the complainant, with the other trustees, to induce him to abandon it, and convey the title at once to the corporation, covenanted to indemnify him against loss on his suretyship. If any thing can be clearer than that, after this voluntary relinquishment, Woods could not assert his *lien,* it must be that those who induced him to relinquish it, cannot ask this Court to subrogate them to a right relinquished at their instance.

It appears from this examination, that there was no equity in the bill, so far as it asserted a specific lien against the creditors

under the trust deed, but if the money paid by the complainant for the corporation, was paid at the instance of the corporators, or of those intrusted with the management of its concerns, the complainant is entitled to relief against the corporation, and for that purpose, the bill should have been retained. The decree of the chancellor, therefore, is affirmed, so far as it dismisses the bill against B. F. Porter, and the creditors in the trust deed, and reversed, so far as it relates to the trustees of the corporation, and remanded for further proceedings.