## STRANGE, ET AL. v. KEENAN, ET AL.

1. Where land is sold by order of the Orphans' Court, to make more equal distribution among the heirs, and security is not required to be taken for the purchase money, the heirs have an equitable lien upon the land for the purchase money, which may be enforced either against the original purchaser, or against a purchaser from him, with notice of the facts.

2. In such a case, where the administratrix was the purchaser, the heirs may proceed to enforce their *lien* against a second purchaser with notice, and cannot be required to resort in the first instance to the sureties of the administratrix on her official bond, she having paid no part of the purchase money, and being insolvent.

Error to the Chancery Court of Macon.

THE bill is filed by the infant and adult heirs at law, of Welborn D. Westmoreland, and charges that administration was granted of his estate by the Orphans' Court of Macon to one Seaborn J. Westmoreland, who now resides in parts unknown, and to Elizabeth Westmoreland, who has since intermarried with one Patrick Cousins. That the intestate died possessed of certain real estate, and that on the 1st Monday in March, 1841, the Orphans' Court of Macon county, upon the petition of the said Elizabeth, as administratrix, and in order to make an equal and fair division amongst the heirs of the intestate, directed the said real estate to be sold at public auction, and appointed commissioners to carry the order into effect, by a sale of the lands. That the commissioners exposed the land to sale on the 3d July, of the same year, on a credit until the 1st January after, when the lands were sold to the administratrix, who was the highest and best bidder for the sum of six thousand dollars. That the commissioners received from her, her individual note for the purchase money, without personal, or other security, and reported their action on the subject to the Orphans' Court, by which it was confirmed on the 3d day of August succeeding, and they directed to make title to the administratrix to the land, which was accordingly done, by their deed, bearing date 3d July, 1841.

The bill further charges, that the note for six thousand dollars is still due, and unpaid, and that the administratrix and her husband are both insolvent. The bill further charges, that on the 27th January, 1842, Cousins and his wife, by their deed of that date, conveyed to the defendant, Keenan, the land so purchased, for the consideration, as expressed in the deed, of seven thousand dollars, but that the true consideration was a debt due from the said Elizabeth to the said Keenan, and that at the time of his pretended purchase, and execution of the deed, he knew that the purchase money was due and unpaid.

The prayer of the bill is, that the equitable lien of the heirs at law for the purchase money unpaid, be enforced. Cousins and wife, and Keenan were made defendants, but omitted to answer the bill, and a decree *pro confesso* was taken against them. The proof fully establishes the allegations of the bill. Upon the hear-

ing, the Chancellor dismissed the bill for want of equity, from which this writ is prosecuted, and which is the error now assigned.

WILLIAMS, McLESTER and DOUGHERTY, for plaintiffs in error, cited 2 Story's Eq. 462, 469 ; 15 Vesey, 328.

HAYNE, contra.

ORMOND, J.—The general principle is undoubted, that a vendor of land, who does not take security for the purchase money, has a lien upon the land itself for its payment, which may be enforced either against the vendee, or a purchaser from him with notice, unless it can be inferred from the circumstances of the case, that credit was given exclusively to the person, and the land was not relied on as a fund to reimburse the vendor.   In Macreth v. Simmons, 15 Vesey, 329, Lord Eldon held, that even where security was given, it "depended upon upon the circumstances of each case, whether the Court was to infer that the *lien* was intended to be reserved, or that credit was given, and exclusively given, to the person from whom the other security was taken."

This question was fully considered by this Court, in Foster v. The Athenæum, 3 Ala. Rep. 302, and there held, that the vendor of land has a *lien* in equity, for the unpaid purchase money, where he has not taken personal security for its payment, or a distinct collateral security, as a pledge or mortgage.   In this case no security whatever was taken for the payment of the purchase money, and the defendant, Keenan, the second vendee, purchased with full knowledge of the fact.   The only question therefore in the cause is, whether the rule applies to sales made by order of the Orphans' Court.

By our statute law, the Judge of the Orphans' Cour, upon the petition of the administrator, and for the causes assigned in the statute, may order a sale of the land of a deceased person, and is invested with a discretion to direct the land to be sold, either "for money, or on credit, as may be most just and equitable."   The object of the sale in this instance, being to make more equal distribution amongst the heirs, the Court directed the sale to be made on a credit, and did not require security to be taken for

the payment of the purchase money. We can perceive no reason why sales of this description should not be subject to the law applicable to all sales of real estate. If the Judge of the Orphans' Court, acting for the heirs, thinks proper to order a sale on credit, and does not require security to be given for the purchase money, the land must be considered as the primary fund for its payment.

- It was contended, that the statute contemplated that in these judicial sales by the Orphans' Court, the title should pass to the purchaser, untramelled by this implied lien. It is difficult to suppose, that in sales of this description, made without the consent of those interested, and in which infants are generally concerned, a right is taken away which is secured to adults acting for themselves; such a construction of the law would be most unreasonable. The only security which the Judge of the Orphans' Court is required to take in such cases, is, a bond from the administrator, with security for the faithful application of the money when collected, which it is obvious, would afford no security whatever, if the money could not be collected from the purchaser of the land. The same remark applies to the sureties of the administrator in his official bond; they do not become responsible until the money comes to the hands of the administrator, or is lost by his negligence, and therefore could not have been contemplated as a security for the payment of the purchase money.

- It is further urged, that as the administratrix became herself the purchaser, in legal estimation the money is in her hands, subject to distribution, as was held by this Court in Childress v. Childress, [3 Ala. 752.] It is doubtless true, that the heirs might, if they thought proper, elect to consider the money as in her hands, as she cannot sue herself; but it is equally clear, they cannot be compelled to make such election, when, as in this case, the administratrix has not paid any part of the purchase money, and being insolvent, cannot be compelled to pay it. If the land had been retained by the administratrix, it can admit of no doubt, that the heirs by a decree in chancery, could have sold it for the payment of the purchase money, and the defendant, Keenan, having purchased with notice of all the facts, can be in no better condition; he is charged with notice of this trust, and took the title subject to it.

The concession that the heirs might elect to consider the purchase money paid, and after a decree in the Orphans' Court against the administratrix, proceed against the sureties on her official bond, cannot avail the defendant, Keenan.   He cannot insist, they should forego the enforcement of a clear right against him, because they have another means of reimbursement, from another source.   For aught this Court can know, that would prove unavailing, as the sureties to the official bond of the administratrix may not be able to respond.   In every aspect in which we have been able to consider this case, we think that the heirs have a *lien* for the purchase money unpaid, upon the land in the hands of Keenan, he having purchased with notice that it was unpaid ; it is therefore unnecessary to consider, whether he was a *bona fide* purchaser or not.

The defendants declined answering the bill, and the cause was heard on the bill, decree *pro confesso,* and proof.   The cause was therefore ripe for a hearing, and we can perceive no reason whatever for remanding it, but must proceed to render such decree on the merits, as the Court below should have rendered. Let the decree of the Chancellor dismissing the bill be reversed, and a decree be here rendered, declaring, that the heirs have a *lien* on the land for the purchase money unpaid, and that the cause be remanded for a reference to the Master, to ascertain the amount of the purchase money still due.