# Simpson *v.* McAllister.

*Bill in Equity to establish Trust in Lands, and vacate Sale un-
der Decree enforcing Vendor's Lien.*

1. *Vendor's lien; who may assert.*—In the absence of an agreement to the
contrary, the vendor of lands retains a lien on them for the payment of the
purchase-money, although he has executed an absolute conveyance, reciting
therein that the purchase-money has been paid ; which lien, if not waived or
abandoned, prevails against all the world, except a *bona fide* purchaser for val-
uable consideration without notice, and passes to an assignee of the note given
for the purchase-money, unless the assignment is without recourse, and may
be asserted by him in his own name.

2. *Same ; when not waived.*—When the agreed price is shown to be the full
value of the land, a waiver or abandonment of the vendor's lien will not be
inferred, or implied, because the vendor was the son-in-law of the purchaser,
and the contract was made with the declared purpose and intention, on the
part of the purchaser, to settle the land on another married daughter, as an
advancement, who was afterwards placed in possession by him.

APPEAL from the Chancery Court of Lauderdale.
Heard before the Hon. H. C. SPEAKE.

The original bill in this case was filed on the 6th Feb-
ruary, 1872, by Mrs. Elizabeth R. Simpson, suing by her
husband, James H. Simpson, as her next friend, against
John W. McAllister, surviving partner of the late firm of
Simpson, McAllister & Co.; and sought to establish and de-
clare, in the complainant's favor, a trust in a certain tract of
land, of which she was in possession, and to vacate and set
aside, as against her, a decree in chancery which the de-
fendant had obtained, subjecting the lands to sale in satis-
faction of a vendor's lien asserted by him. The facts of the
case were thus stated in the opinion of the court:

BRICKELL, C. J.—"The allegations of the original bill are,
that John Coffee Simpson, a brother-in-law of the complain-
ant, purchased a tract of land, for the purpose of securing
to her and her family a home and the means of support, and
placed her in possession thereof; and that she and her fam-
ily have since resided thereon.   On the 19th October, 1859,
her father, Henry D. Smith, then of large wealth, was de-
sirous of making her an advancement, and proposed to her

said brother-in-law to join him in settling said lands on her, for her sole and separate use, and that he would pay him for said lands seven thousand five hundred dollars, as an advancement to complainant, and would convey the same to her. Relying on this promise, the said brother-in-law sold and conveyed the lands to her father, and without it would not have made the sale and conveyance. At the time of such sale and conveyance, her said brother-in-law preferred a deed to be executed by her father, conveying the said lands to her; which deed was delivered to him, and which he promised to execute and deliver to complainant, but failed and neglected so to do. The lands were worth more than the sum of seven thousand five hundred dollars, but her said brother-in-law was induced to sell them for that sum to her father, because of his promise to convey them to the complainant. Continuous recognition by her father of the complainant's right to the lands, until his death in 1869, is averred, though he never made any conveyance of them to her.

"The appellee, McAllister, as surviving partner of the firm of Simpson, McAllister & Co., claiming to be the assignee of one of the notes made by said Henry D. Smith, payable to said John Coffee Simpson, given for the purchase-money of said lands, filed a bill against said Smith, and obtained a decree, declaring said note a lien on said lands, and ordering a sale thereof for its payment. Under said decree, the lands were sold. Her husband was about intervening, to assert and protect her rights, but was induced not to do so, by the promise of said McAllister to permit him, as her trustee, to redeem said lands, at and for the sum of two thousand dollars, and of this sum her husband had made a partial payment.

"It is averred, that the note assigned to McAllister was not made by her father in consideration of the purchase of said lands, and was not a lien thereon; that it was given to reimburse said Simpson for a part of the money he had paid in purchasing said lands. It is also averred, that at first it was agreed said John Coffee should convey said lands directly to the complainant, and, in pursuance of such agreement, he made a deed conveying said lands to her. The deed, it is averred, was delivered to her, and is exhibited. It is not attested, nor was its execution ever acknowledged. The conveyance to her father was subsequently made, that he might convey to her, and thereby it would appear that said lands were an advancement to her.

"It is further averred, if said note was given for a part of the purchase-money of said lands, that the remainder of the purchase-money was an advancement to her, by her father,

and, to that extent, attached to said land her right to a statutory separate estate therein ; that the note of her father was transferred to Simpson, McAllister & Co., in payment of a debt due them from said John Coffee, and they had full knowledge said lands had been given to her by her father and brother-in-law.

"The prayer of the bill is, that it be declared that said lands were purchased with her money, or that her estate was invested in the purcha-e thereof—that said Smith held the title thereto in trust for her ; that the decree declaring McAllister had a lien thereon, and ordering a sale thereof, be declared void, and of no effect as to the complainant; that McAllister's purchase be set aside, and the complainant invested with the legal title. If she is not entitled to that relief, it is prayed that a trust in her favor, superior to the lien of said McAllister, be declared, for the sum of five thousand eight hundred and sixty-five dollars, the amount of the purchase-money paid by her father ; and for general relief.

"The answer denies the agreement alleged between complainant's father and brother-in-law ; avers said lands were sold by Simpson to said Smith, at the price of seven thousand five hundred dollars, their full value, one thousand dollars of which was paid in cash, and for the remainder promissory notes were made by said Smith, payable to said Simpson, one of which was the note on which the decree in favor of respondent was rendered ; that Simpson executed to said Smith an absolute, unconditional deed for said lands, and he retained the title thereto. Denies that said lands, or any part of the purchase-money, was an advancement to complainant by her father, or was intended as such. Denies any conveyance of the lands to complainant, by said Simpson.

"A cross bill was filed against the complainant and her husband, averring a sale of the lands to the complainant, a failure to pay the purchase-money, and praying a sale thereof; on which relief was decreed. As in this respect, the decree of the chancellor is not assigned as error, it is not necessary to state further the allegations of the cross bill. The chancellor, on a hearing on pleadings and proof, dismissed the original bill, and the dismissal is the error assigned."

W. J. WOOD, for appellant.—1. John Coffee Simpson, who owned the land, agreed to sell it to H. D. Smith, his father-in-law, if the latter would settle it on the complainant. This agreement is proved. Simpson's deed to complainant, though not acknowledged nor attested, accompanied by possession, shows the understanding of the parties that the land was

[Simpson v. McAllister.]

purchased for her. She was in possession at the date of the purchase, October 19, 1859, and has remained in possession ever since. Her father during his life, and his administrator and heirs since his death, have recognized her right to the land, as an advancement made to her; and a resulting trust is thus established in her favor, as against Smith, his administrator and heirs, or any one claiming under him or them.— *Kennedy v. Kennedy*, 2 Ala. 571; *Stiles & Co. v. Lightfoot*, 26 Ala. 443; *Wilson v. Sheppard*, 28 Ala. 623; *Barrell v. Hanrick*, 42 Ala. 60.

2. As to latent equities, the defendant stands in no better position than Smith stood. He parted with nothing valuable, and incurred no new liability. He took Smith's note in payment of Simpson's account, and Simpson was insolvent.— *Boyd v. Beck*, 29 Ala. 713; 30 Ala. 193.

3. The defendant can stand in no better position than Simpson occupied, and Simpson could not have asserted any lien on the land under Smith's note, on which the defendant bases his claim to a vendor's lien. The deed for the land is absolute; the consideration is specified at $7,500, the receipt of which is acknowledged; and the complainant was put in possession of the land, and received it as advancement from her father, by the concurrent will and intention of her father and Simpson. No mention is made of any deferred payment, and no note is given until the 1st January, 1860, nearly three months afterwards. The complainant's rights vested, and became perfected, when she was put in possession, and the money was paid by her father to Simpson; and no subsequent arrangement between them could affect her. As to the amount paid by her father to Simpson, at least, she is an innocent purchaser without notice. As against her, Simpson waived or lost any claim he might have had on the land, by failing to assert it, taking no note for it, and not mentioning it in his deed. His decree, foreclosing his vendor's lien against Smith, is not binding on her, as she was not made a party to the suit,—an omission which is significant.

E. A. O'NEAL, *contra*. (No brief on file.)

BRICKELL, C. J. [After stating the facts as above.]—The evidence is clear the transaction between Smith and Simpson was a sale of the lands, for their full value; and that the note, on which McAllister obtained the decree, was given for a part of the purchase-money. It was assigned by Simpson, before maturity, to Simpson, McAllister & Co., for a valuable consideration, the payment of a debt due from him to them. It is the settled law of this State, that a vendor of

real estate, in the absence of an agreement to the contrary,
retains a lien for the payment of the purchase-money, though
he may execute an absolute conveyance to the vendee.—*Fos-
ter v. Trustees of Athenæum*, 3 Ala. 302. An assignment of
the notes given for the purchase-money, which is not with-
out recourse on the vendor, carries with it the lien; and the
assignee may enforce it, as he could enforce a mortgage, or
other security for a debt, taken and held by the assignor.—
*Wells v. Morrow*, 38 Ala. 125. Where a conveyance of the
legal estate is made by the vendor, the vendee is regarded
as a trustee for the vendor—as holding the estate, clothed
with a trust for the payment of the purchase-money. The
trust follows the estate—is attached to it, if it devolves on
heirs or devisees, or voluntary donees, or any other than a
subsequent *bona fide* purchaser, for a valuable consideration,
without notice. To the creation of the lien, no express or
specific agreement between vendor and vendee is essential.
It stands independent of any such agreement, express or im-
plied, on a broad principle of equity, that one man ought
not in good conscience to get and keep the estate of another,
without paying the consideration money.—2 Story's Eq.
§§ 1219-20. The lien existing generally, and resting on this
principle, on those who resist it is cast the burthen of prov-
ing that "it has been intentionally displaced, or waived by
the consent of the parties. If, under all the circumstances,
it remains in doubt, then the lien attaches."—2 Story's Eq.
§ 1224.

The facts on which the appellant relies, to repel the ex-
istence of the lien in this case, are, that the vendor made
the sale, and the vendee bought, with the sole purpose of an
advancement to her, so that a home could be secured to her
and her children. With this purpose, it is supposed, the re-
tention of the lien is inconsistent. If it could be admitted
these facts are fully proved, it would be difficult to infer from
them a waiver or abandonment by the vendor of the lien
given him for the payment of the purchase-money. It was
not the intention of the parties, that he should make a do-
nation to the vendee, or, through him, to the appellant. All
that was expected of him, was the sale of the lands to the
father, that he might be enabled to advance the appellant.
Payment, and full payment of the purchase-money, it was
contemplated the vendee should make; and no other rela-
tion existed, or was intended as between them, but that of
vendor and vendee. Payment, or security of payment of the
purchase-money, is not only consistent with the intention of
the parties, but is indispensable to its just and equitable ex-
ecution. On any other hypothesis, the vendor would be con-

verted into the donor, whose bounty it was expected the appellant would receive.

The lien for the purchase-money passed to Simpson, Mc-Allister & Co., on the assignment of the note to them.. It was properly enforced by the appellee, as their survivor. The only right the appellant could possibly assert against them, would be a redemption of the land by the payment of the note; and this right is not claimed by her bill. She has no equity or right, in any aspect of the case, which could prevail against the vendor's lien. This view is decisive against her, and the decree of the chancellor must be affirmed.