# Shorter *v.* Frazer.

### Bill in Equity to Enforce Vendor's Lien on Land.

1. *Unauthorized sale of lands by guardian or trustee; remedies of ward or cestui que trust.*—When a guardian, or other trustee, makes an unauthorized sale of lands belonging to his ward, or the *cestui que trust*, the latter may, at his election, either repudiate the sale, and recover the lands, or ratify the sale, and claim the purchase-money; and if he elects to ratify it, his ratification relates back to the date of the sale, and clothes him with all the rights of the original vendor, including the right to enforce the vendor's lien for the unpaid purchase-money.

2. *Vendor's lien; arises when, and against whom enforced.*—In the absence of an agreement to the contrary, expressed or inferred, the vendor of lands has a lien on them for the unpaid purchase-money, although he has executed a deed reciting the payment of the purchase-money; which lien arises by operation of law, unless excluded by the agreement or conduct of the parties, and adheres to the lands until they pass to a *bona fide* purchaser for valuable consideration without notice.

3. *Same; how affected by statute of limitations, and lapse of time.*—It is a settled doctrine of this court, that the vendor's lien may be enforced in equity, after an action at law for the unpaid purchase-money has become barred by the statute of limitations, and that it does not become a stale demand, as that term is used in courts of equity, until the expiration of twenty years. (MANNING, J., dissenting, where the vendor has executed a conveyance, and has not taken a mortgage, nor otherwise reserved a lien by contract.)

4. *Same; when sub-purchaser is chargeable with notice.*—A purchaser of lands is chargeable with constructive notice of every fact which appears on the face of his deed, or of any other deed which forms a necessary link in his chain of title; and when it thus appears that his vendor purchased from a guardian, who had no authority to sell, he is chargeable with notice of the outstanding legal title in the ward, and can not claim protection against the lien for the purchase-money, if the ward elects to ratify the sale.

APPEAL from the Chancery Court of Lee.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 21st March, 1871, by

[Shorter v. Frazer.]

Charles S. Shorter and others, children and heirs at law of
James H. Shorter, deceased, against Addison Frazer and
others; and sought to enforce a vendor's lien on a certain
tract of land, which was particularly described, for the pay-
ment of a note alleged to have been given for a part of the
purchase-money. The note, which was made an exhibit to
the bill, signed by said Frazer, and dated Columbus, Georgia,
February 2d, 1853, was in these words : " On or before the
1st day of January next, I promise to pay Mrs. Mary E. Shorter,
guardian of heirs of J. H. Shorter, deceased, two thousand
six hundred and twenty 19-100 dollars, for the north half of
section eight (8), and north half of section four (4), township
nineteen (19), range twenty-six (26), in Macon county, with
interest on the above amount from the 25th December, 1852 ;"
indorsed on which was a credit for $900, dated 22d Febru-
ary, 1854, and signed by W. H. Maynor. The bill alleged,
that the lands were sold to said Addison Frazer, on the 2d
February, 1853, by Mrs. Mary E. Shorter, as guardian for
the infant heirs of her deceased husband, James H. Shorter;
that this note was given for a part of the purchase-money,
and was still unpaid ; that no conveyance of the lands was
executed, but only a bond conditioned to make title on pay-
ment of the note ; and that the land was in the possession of
said Addison Frazer, and of the other defendants claiming
under him. Addison Frazer having died soon after the filing
of the bill, the suit was revived against his heirs at law ; and
an amended bill was filed, before answer by any of the de-
fendants, striking out the averment as to the title-bond, and
inserting, in lieu of it, these averments : " that the said Mary
E. had no authority to make any conveyance of said lands,
or to do more than give a bond to convey upon payment of
the purchase-money, if that, which complainants are informed
and believe she did ; which sale and bargain complainants
hereby offer in all things to affirm, upon payment of the
purchase-money therefor as evidenced by said note ;" and
that the complainants were infants when the lands were sold,
and attained the age of twenty-one years within six years
before the filing of the bill.

The defendants filed a joint answer, denying the contract
of sale as alleged in the bill, and alleging that there were
two separate and distinct contracts of sale—the first on the
27th October, 1849, for the north half of section eight (8),
at the price of $1280, and the other on the 3d November,
1849, for the north half of section four (4), at the price of
$1280; that part of the purchase-money was paid in cash, and
separate notes were given for the residue, which were paid
at maturity, and which were produced, and set out in the

answer; and that Mrs. Shorter executed conveyances for the lands to the said Addison Frazer, at or about the dates of the respective sales; which conveyances were produced, and made exhibits to the answer. The first conveyance, as shown by the exhibit, is dated the 27th October, 1849; purports to be made by Mary E. Shorter, "for herself, and as guardian of her children by her late husband, James H. Shorter, deceased;" recites, as its consideration, the sum of $1280 in hand paid; and uses, as words of conveyance, the words "has granted, bargained, sold, and quit-claimed." The other deed is in like form, but is dated the 3d November, 1849, conveys the north half of section four (4), and recites the payment of $800 as its consideration. The answer further alleged, that Addison Frazer went into possession of the land at the dates of these respective purchases, and continued in the uninterrupted possession thereof until his death, except those portions which he sold in the meantime, at different dates, to the several defendants who thus held under him, and who claimed to be *bona fide* purchasers for valuable consideration, without notice of the equity asserted in the bill, having paid the purchase-money in full, entered into possession, and received conveyances, which were made exhibits to the answer. The answer contained a demurrer to the bill—1st, for want of equity; 2d, because the demand was stale; and, 3d, because the complainants could not ratify the contract in part, and repudiate it in part—that is, could not ratify the sale made by their guardian, and yet repudiate her conveyances to the purchaser. After the filing of this answer, a second amended bill was filed by the complainants, by leave of the court, adopting the averments of the answer as to the date and terms of the contracts of sale, and alleging that the note exhibited with the original bill was given, on the day of its date, in lieu of the original notes for the purchase-money, which were thus consolidated and then delivered up.

No testimony was taken by either party, but, by consent and agreement in writing, the following facts were admitted: "It is admitted, that Mary E. Shorter sold the lands in controversy to Addison Frazer, at the dates respectively stated in the answer, and for the prices therein stated, and for the notes as stated therein; and that the notes therein described were given for the said purchase-money at the respective sales; and that she gave him the deeds made exhibits to said answer; and that said deeds were duly executed and delivered by said Mary E. Shorter to said Frazer; and that said Frazer went into the possession of said lands, under said purchases, at the dates they respectively bear, and held the

[Shorter v. Frazer.]

possession thereof until he sold them to the parties named and set forth in the answer. It is admitted, also, that the several parties alleged to have bought from said Addison Frazer, did buy from him, at the dates specified in the answer, and for the prices therein named; and that each paid down in cash, at the times of said several purchases, to the said Frazer, the said amounts recited in said several deeds; and that all the alleged purchases, subsequent to the purchases from said Frazer, took place at the times respectively mentioned and stated in the answer, and for the amounts as stated, and that the purchase-money of each of said sub-purchasers was paid down in cash to the parties from whom they respectively purchased; and that all the deeds mentioned and described in the answer, as well those which are made exhibits as those which are not, were duly executed and delivered by the parties as alleged; and that the parties buying each became possessed of said lands as stated, under such respective purchases, and respectively held the possession as charged and averred in the answer; and that said possession remained and continued in the said Addison Frazer, and in the purchasers and sub-purchasers from him, down to the present time. It is admitted, also, that each and every purchaser from said Frazer, and each sub-purchaser, will swear that they made their respective purchases, and paid down the purchase-money in cash, and that at the time of making said purchases, and at the time of paying the purchase-money and taking said deeds, they had no knowledge, notice, or information that there was any claim on said land for any unpaid purchase-money due by said Frazer; nor had they any notice of the note on which this bill is filed; nor had they, or any or either of them, any such notice or knowledge of the same, at any time previous to said respective purchases and payments as stated, or that said note was outstanding and unpaid. The execution of said note, on which the bill is filed, is admitted; and it is admitted, also, that the complainants are the children and only heirs at law of James H. Shorter, deceased; and that said Shorter died in Georgia, where he was living, on or about the first day of January, 1840; and that he was in possession of said lands at the time of his death, claiming to be the owner thereof; and that the complainants are, and were at the filing of the bill, the owners of said note, claiming it as the heirs of said James H. Shorter; and that George H. Shorter, the only other child of said James H. deceased, died in 1868, intestate, and without widow or child; and that there were no outstanding debts or liabilities against him; and that no administration has been taken out on his

[Shorter v. Frazer.]

estate; and that the complainants are his only heirs and next of kin."

On final hearing, on pleadings and proof, the chancellor dismissed the bill, holding that the complainants were not entitled to relief, but not stating on what ground; and his decree is now assigned as error.

GEO. W. GUNN, and G. D. & G. W. HOOPER, for the appellants.—Lapse of time does not bar a bill to enforce an outstanding vendor's lien, until the expiration of twenty years from the maturity of the debt.—*Relfe v. Relfe*, 34 Ala. 503. Besides, in this case, the contract was invalid, until ratified by the heirs.—*Ragland v. Morton*, 41 Ala. 344; *Worley v. High*, 40 Ala. 171; *Blackwell v. Blackwell*, 33 Ala. 57; *Andrews v. Hobson*, 23 Ala. 219; *Colbert v. Daniel*, 32 Ala. 314; *Foster v. Gressett's Heirs*, 29 Ala. 393; *Greenwood v. Coleman*, 34 Ala. 156. Under the admitted facts, there can be no presumption that the purchase-money has been paid; and the right of the heirs to enforce a vendor's lien must prevail against all the world, except only a *bona fide* purchaser for valuable consideration without notice.—*Knight v. Blanton's Heirs*, 51 Ala. 333; *Pylant v. Reeves*, 53 Ala. 132. The defendants can not claim protection as purchasers without notice, because Mrs. Shorter's deed to Frazer shows that the legal title was in the heirs of James H. Shorter, and they are chargeable with constructive notice of the fact.—*Moore v. Clay*, 7 Ala. 742; *Wells v. Morrow*, 38 Ala. 125; *Garrett v. Lyle*, 27 Ala. 586; *Bradford v. Harper*, 25 Ala. 337; *Brewer v. Brewer*, 19 Ala. 482; *Pepper v. George*, 51 Ala. 174; *Johnson v. Toulmin*, 18 Ala. 50; *Boon v. Childs*, 10 Peters, 177; *Day v. Preskett*, 40 Ala. 624; 3 Paige, 421; 13 How. U. S. 18; 34 N. Y. 93; 27 N. Y. 277; 7 Peters, 271; *Wilson v. Wall*, 34 Ala. 288; *Center v. P. & M. Bank*, 22 Ala. 743; *Chapman v. Glassel*, 13 Ala. 50; *Dudley v. Witter*, 48 Ala. 664; 10 Curtis, 469.

WILLIAM H. BARNES, *contra.*—1. The bill was filed nearly twenty-two years after the sale and conveyance of the lands by Mrs. Shorter. After the lapse of twenty years, the courts will presume conveyances, orders, settlements, "and almost anything else," to support a transaction such as this, which has been accompanied with continuous, uninterrupted, peaceable possession.—1 Best on Pr. Ev. 591, note 1; *Valentine v. Piper*, 22 Pick. 81; 17 Indiana, 255; *White v. Loring*, 24 Indiana, 319; *Rider v. Hathaway*, 21 Indiana, 298; *McNarrie v. Hunt*, 5 Missouri, 300; *Hepburn v. Ould*, 5 Cranch, 262; *Johnson v. Johnson*, 5 Ala. 90; *Juzan v. Toulmin*, 9 Ala. 662;

[Shorter v. Frazer.]

*Martin v. Branch Bank*, 31 Ala. 115; *Ragland v. Morton*, 41 Ala. 344; *Rhodes v. Turner*, 21 Ala. 210–18; *Barnett v. Tarrence*, 23 Ala. 463; *Austin v. Jordan*, 35 Ala. 642; *Blackwell v. Blackwell*, 33 Ala. 57; *McCartney v. Bone*, 40 Ala. 533; *Worley v. High*, 40 Ala. 171; *McArthur v. Carrie*, 32 Ala. 75.

2. The complainants can not ratify the contract in part, and repudiate it in part. Where a party adopts a contract, which was entered into without his authority, he must adopt it altogether; he can not ratify the part which is beneficial to him, and reject the remainder : he must take the benefits *cum onere.*—*Murdorff v. Wickersham*, 63 Penn. St. 87; *Coleman v. Stark*, 1 Oregon, 115; *Bennett v. Judson*, 21 N. Y. 238; 28 N. Y. 389; 46 N. Y. 310; 53 N. Y. 114; 55 N. Y. 343; 1 Hill, N. Y. 317; 23 Wendell, 260; 7 East, 164; Broom's Legal Maxims, 632.

BRICKELL, C. J.—There are three questions, arising upon this record—the *first,* whether the complainants (now appellants) can assert and maintain a lien on the lands in controversy, for the payment of the promissory note, given by the original vendee to their guardian, for the payment of the purchase-money; *second,* whether the claim for the enforcement of such lien is *stale,* according to the doctrine of a court of equity, or barred by the statute of limitations; *third,* are the defendants (now appellees) entitled to protection as *bona fide* purchasers, against such lien.

The sale and conveyance of the lands by the guardian was unauthorized, in derogation of her duty and trust, passing no title to the purchaser, and, at the option of the wards, could have been avoided. But we apprehend there is no room for doubt, that if the wards so elected, the sale and conveyance was capable of ratification and confirmation by them, as well as of repudiation. They could have affirmed it, by holding the guardian liable for the purchase-money; and they may affirm it, by claiming the note given for the purchase-money, as assets to which they are entitled. In whatever mode the confirmation is manifested, it has relation to the day of sale, and from that day the wards stand as the vendors, clothed with all the rights, and subject to all the duties of a vendor. The sale and conveyance was intended for their benefit; and the vendee, or those who succeed to his estate, or the estate it was intended to confer on him, have no just ground of objection to its confirmation by them. The sale and conveyance is merely completed, and the estate the vendee intended to acquire, passes to him. The principle is general, applying to the relation of trustee and *cestui que trust* in all its various forms, that if the trustee

makes an unauthorized sale of the trust estate, the *cestui que trust* may ratify and confirm it, claiming the purchase-money; or may repudiate it, and recover the estate. The trustee can not repudiate it, nor can the purchaser, if the *cestui que trust* is willing to ratify and confirm it.—*Greenleaf v. Queen*, 1 Pet. 146; *Lamkin v. Reese*, 7 Ala. 170; *Bland v. Bowie*, 53 Ala. 152; *McCully v. Chapman*, 58 Ala. 325; *Alderson v. Harris*, 12 Ala. 580.

The sale and conveyance having been ratified and confirmed by the appellants, they stand as the vendors of the lands, subrogated to all the rights and remedies of the original vendor, the guardian. It is the settled law of this State, that a vendor of lands, in the absence of an agreement to the contrary, express or implied, retains a lien for the payment of the purchase-money, though he may execute a conveyance, which on its face acknowledges full payment of the consideration. The vendee stands in the relation of a trustee for the vendor—holding the legal estate charged with a trust for the payment of the purchase-money. The trust follows the estate, and binds it, unless it devolves on a *bona fide* purchaser without notice. It does not spring from, or depend upon the agreement of vendor and vendee. The law raises it, unless the agreement of the parties excludes it, upon the broad principle, that in good conscience one man ought not to get and keep the estate of another, without paying the consideration-money.—*Foster v. Athenœum*, 3 Ala. 302; *Pylant v. Reeves*, 53 Ala. 122; *Simpson v. McAllister*, 56 Ala. 228.

It is also the settled doctrine of this court, that the lien is not lost, because an action at law for the recovery of the purchase-money is barred by the statute of limitations; nor is the demand for its enforcement *stale*, within the sense of that term, as used in courts of equity, unless its enforcement is delayed for twenty years after the purchase-money becomes due and payable.—*Driver v. Hudspeth*, 16 Ala. 348; *Relfe v. Relfe*, 34 Ala. 500; *Bizzell v. Nix*, 60 Ala. 281; *Moreton v. Harrison*, 1 Bland, 491; *Singar v. Henderson*, *Ib.* 236.

The lien, as we have said, will prevail against the vendee, and all others claiming under him than *bona fide* purchasers, for a valuable consideration, without notice. As against the heirs, or the voluntary donees, or purchasers of the vendee with notice, or purchasers from him acquiring an equitable title only, the lien exists and will be enforced.—2 Story's Eq. § 1228. The general principle embodied in the maxim, *Nemo plus juris ad alium transferre potest quam ipse habet*, is recognized by courts of equity, as well as by the courts of common law; as is also the general principle, embodied in the

[Shorter v. Frazer.]

maxim, *qui prior est in tempore, potior est in jure.* An exception, however, obtains in favor of a purchaser who acquires the legal estate, from a vendor seized, or pretending to be seized, of a fee simple in the premises. If the purchase is of a mere equity, which can be enforced only through the instrumentality of a court of equity, there is no reason for a departure from the general principle, that priority in point of time creates priority in point of right, and that the transfer or conveyance must be limited to the interest of the grantor.—2 Lead. Eq. Cases, 94–5.

Another principle, well established, is, " that a purchaser will have constructive notice of every thing which appears in any part of the deeds or instruments which prove and constitute the title purchased, and is of such a nature that, if brought directly to his knowledge, it would amount to actual notice. For the right of a purchaser can in no case go beyond his own title, and whatever appears on the face of the title papers, forms an integral part of the title itself." 2 Lead. Eq. Cases, 168–9 ; *Johnson v. Thweatt,* 18 Ala. 741 ; *Wilson v. Wall,* 34 Ala. 288 ; *Witter v. Dudley,* 42 Ala. 616 ; *Taylor v. Forsey,* 56 Ala. 426.

These principles are fatal to the claim of the appellees, to protection as *bona fide* purchasers. The legal estate in the premises did not reside in the vendor, Frazer, through and from whom they deduce title. It resided in the appellants, and the maxim *caveat emptor* is completely applicable. The whole principle on which protection is afforded a *bona fide* purchaser, proceeds on the substantial reason, that by parting with a valuable consideration he has acquired an equity equal in dignity to the outstanding equity of which he has no notice. As a mere equity, that he acquires must be subordinate to older equities, but annexed to it is the legal estate, and it is the legal estate which gives him precedence. In *Hinds v. Vattier,* 7 Pet. 271, said C. J. MARSHALL: "The rules respecting a purchaser without notice are framed for the protection of him who purchases a legal estate, and pays the purchase-money without knowledge of an outstanding equity. They do not protect a person who acquires no semblance of title. They apply fully only to the purchaser of the legal estate. Even the purchaser of an equity is bound to take notice of any prior equity." All the appellees acquired, or could acquire by their purchase, was an equity. If their vendor had fully paid the purchase-money, and the guardian of the appellants had made proper application of it, the estate could and would, in a court of equity, have been charged with it. This is the extent of the equity, perhaps, if the purchase-money had been paid ; not having been

paid, if the appellants elect, as they do, to confirm the sale, the purchase-money is a trust chargeable on the lands; and all that the purchasers from the original vendee acquired, is an equity to the legal estate on the payment of the purchase-money. *They have not the semb'ance of a legal title.*

The several conveyances by the guardian give notice that the legal estate resides in the appellants. Each recites that *Mary E. Shorter, for herself, and as guardian to her children by her late husband deceased,* James H. Shorter, grants and covenants. It is vain for a purchaser from her grantee to profess ignorance of the fact, not now disputed, that the estate resided in the ancestor of the appellants, and that the sale and conveyance by the guardian was unauthorized. Of the title papers of their vendor, the law conclusively charges them with notice. There is, and can be, no more disputation of the fact of notice, than of the presumption every man knows the law. If they were not grossly negligent—if they made, as they were bound to make, an examination of the quality of the estate of their vendor, they could not be ignorant that the legal estate resided in the appellants, and all they could possibly acquire was an equity to charge the lands with the purchase-money, if it had been paid and properly applied. Into its payment and application, they were bound to inquire, for their equity depended on these facts. If it had not been paid, they can not, without professing ignorance of the law, aver that they had not notice of the equity of the appellants, to confirm the unauthorized sale by their guardian, and charge the lands with the payment of the purchase-money. There is no aspect of the case in which, in equity and good conscience, the lands should not be charged with the payment of the original purchase-money. Thereby, the original vendee is freed from standing in the condition of a trespasser, a condition he never intended to assume; acquires that for which he contracted, the legal estate in the premises; and is saved from the injustice of doing that which even the sovereign power of the State can not do, taking the property of another without just compensation.

The decree of the chancellor must be reversed, and a decree will be here rendered, granting the appellants relief.

MANNING, J., dissents upon the proposition, that the vendor of land who has executed a conveyance without reserving or contracting for a lien to secure payment of the price, may sue in equity to establish and enforce such a lien, after recovery of the debt by an action at law is barred by

the statute of limitations; a statute which by express enact-
ment is extended to suits in equity also. For his views on
this subject, he refers to his dissenting opinion in *Bizzell v.
Nix*, 60 Ala. 281.