# Thames *v.* Caldwell *et al.*

*Bill in Equity to enforce Vendor's Lien on Land for Unpaid Purchase-Money.*

1. *Waiver of vendor's lien.*—Where the purchaser died, not having paid the purchase-money, and the land was sold by his administrator under a decree of the Probate Court; and the vendor afterwards accepted from the purchaser at that sale, in satisfaction of his claim against the land, a draft on a third person, surrendered the note given for the purchase-money, and collected a part of the money on the draft in Confederate currency; *held*, that these facts proved a waiver and relinquishment of the vendor's lien.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. ADAM C. FELDER.

The bill in this case was filed on the 1st September, 1869, by William H. Thames, who died pending the suit, and it was thereupon revived in the name of his widow as administratrix; against Henry M. Caldwell, John T. Milner, and the administrator and heirs of John B. Massey, deceased; the said Milner being sued individually, and as the administrator of the estate of Willis J. Milner, deceased. Its object was to enforce an alleged vendor's lien for the unpaid purchase-money of a tract of land, which was sold and conveyed by the complainant, on the 1st October, 1859, to said John B. Massey, since deceased. The agreed purchase-money was $2,000, for which said Massey gave his two promissory notes, for $1,000 each, payable three and fifteen months after date, respectively; and the complainant executed and delivered to him a deed for the land, reciting therein that the purchase-money had been paid. The said John B. Massey died, intestate, in January, 1860, and letters of administration on his estate were granted to his widow. The note last falling due was transferred by the complainant to one Routen, and was paid by Massey's administrator; but the bill alleged that the first note was still due and unpaid, was a lien on the land in favor of the complainant, and was in the possession of said Caldwell and Milner, who claimed it, and who obtained it under the following circumstances: Massey's administrator having obtained from the Probate Court an order to sell the lands, the complainant gave notice at the sale of his lien for the unpaid purchase-money; and said Henry M. Caldwell, who was present, and heard the notice, became the purchaser of the lands, as the agent of

Willis J. Milner, who was his father-in-law. Afterwards, about the 8th March, 1874, Caldwell "proposed to complainant to make some arrangement with him for the extinguishment of his vendor's lien on said land, and proposed to pay a certain sum in Confederate States treasury-notes, and give a draft in your orator's favor on John T. Milner, who was his brother-in-law, payable at sight, for the balance of the purchase-money which might be due; the draft, when paid, or the amount thereof, to be charged by the payer to account of said Willis J. Milner, for whom said Caldwell was acting as agent; and your orator agreed to accept the money offered, and to receive the draft, but with the distinct and express understanding, that he was to part with no right of his unless the draft was paid." Under this arrangement, the bill further alleged, Caldwell paid the specified sum in Confederate States treasury-notes, and gave a draft on John T. Milner for the estimated balance; and the complainant "received the said draft, or order, and delivered said promissory note to said Caldwell, but with no agreement that said draft, or order, was received in payment and discharge of the balance then due on said note, or of your orator's said lien." John T. Milner refused to accept the draft, but paid $300 on it, in Confederate currency, to the complainant, on the 1st August, 1864; which was entered as a credit on the draft. The draft was made an exhibit to the bill, and is referred to in the answers and depositions as "Exhibit C," but it is not copied in the transcript.

Answers on oath were waived. Separate answers were filed by Caldwell and Milner, and decrees *pro confesso* were taken against the other defendants. Caldwell denied that, at the time he bought the land for W. J. Milner, he had any notice of the complainant's alleged lien on the land, or that complainant gave public notice of his lien at the sale by Massey's administrator; but he admitted that he had notice before payment of the purchase-money. As to the transaction between him and the complainant, by which he acquired Massey's note, and gave complainant the draft on John T. Milner, he alleged the facts to be as follows: " About 8th March, 1864, being desirous of paying for said lands, and not being willing to pay while a vendor's lien subsisted against the lot, respondent went with complainant to B. F. Porter, who was then the attorney and agent of said Massey's administratrix; and all three consenting and agreeing together, a calculation was made as to how much was due on complainant's unpaid note for the purchase-money, and another calculation as to how much was due from Willis J. Milner to said Massey's estate, for the purchase-money due from him.

Complainant then, as he had agreed to do, took part payment of his note in Confederate States treasury-notes, and expressed a willingness to take payment of the remainder in the same kind of currency ; and respondent offered to get it for him, if he wished it; but complainant replied, that a draft on John T. Milner would do him as well as money. Thereupon, respondent executed and delivered said draft, and complainant accepted it, with the money paid him as before stated, in full discharge and satisfaction of his said lien note, which he then and there gave up to said Porter, as the attorney of said administratrix ; and, further to evidence fully the intention of the transaction, he at the same time gave said Porter a receipt, in full payment and discharge of the note he had so given up. At the same time, and as part of the same transaction, respondent paid to said Porter, for said Willis Milner, the balance due on said Milner's bid for said land, amounting to something like $2,500 ; and took from said Porter, as attorney for said administratrix, a receipt in full for the payment by said Willis Milner of the amount bid by him for said land. The whole transaction was, in substance, this : Willis J. Milner, by respondent as his agent, induced complainant to take Confederate money in extinguishment of his vendor's lien ; this said complainant did take, accepting a draft in lieu of part of the money ; and said Porter, as agent of the administratrix, accepted the extinguishment of the Thames debt, which had been presented to the administratrix, and was a valid claim against said estate, then solvent, in part payment of the purchase-money due from Willis Milner, and took the balance in money." As to these facts, the answer of John T. Milner was substantially the same as Caldwell's ; and he averred that he had always been willing to accept or pay the balance of the draft in Confederate money, according to the understanding and agreement between the parties when it was given, but complainant would not accept it, and demanded United States currency. Each of said respondents further alleged, that the estates of Willis J. Milner and of Massey had each been declared insolvent, and that the complainant had failed to file his asserted claim against either estate within nine months after the declaration of insolvency.

The complainant's own deposition was taken in his behalf, in which he stated the facts substantially as alleged in the bill; and the depositions of Caldwell and Milner were taken on the part of the defendants, repeating substantially the averments of their answers. The defendants also took the deposition of J. D. Porter, who was the son of said B. F. Porter, and who testified that, at the request of said Caldwell, he

[Brown et al. v. Grimes.]

had examined and searched among his father's papers, for the receipt which the complainant had executed, as stated by Caldwell; that he had found it, and filed it away, but afterward lost or misplaced it, and could not produce it; that he had read it carefully, and that it contained an express relinquishment of the vendor's lien on the land On final hearing, on pleadings and proof, the chancellor dismissed the bill, but without delivering any written opinion, or stating the reasons on which his decree was founded; and his decree is now assigned as error.

THOS. H. WATTS, with GAMBLE & BOLLING, for appellant.

HERBERT & BUELL, *contra.*

MANNING, J.—After a careful examination of the pleadings and evidence in this cause, we are unable to perceive that the chancellor erred in his decree. The preponderance of the testimony is in favor of the conclusion that the real estate, which appellant's intestate sold and conveyed to John B. Massey, was released from the equitable lien the vendor might have asserted for the payment of the purchase-money, by his subsequent dealings in respect to it with the persons who bought the property afterwards, at the sale of it as a part of the estate of Massey after his death. It is unnecessary to discuss the testimony in respect to that transaction, or to consider what effect upon the vendor's equitable lien the failure to present the claim to the debtor's administrator would have under the statute of non-claim. The difference between the interest of a mortgagee, who has an estate in the mortgaged property, and the equitable lien of a vendor, upon lands which he has conveyed by an absolute deed, without having received payment of the purchase-money, is briefly noticed in *Halfman's Executors v. Ellison,* 51 Ala. 543.

The decree of the chancellor must be affirmed.