# Williams *v.* McCarty.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Vendor's lien; discharged by novation of contract.*—Where lands
were sold by an executor, under authority conferred by a private statute,
for the purpose of division and distribution among the parties interested
under the will, five of whom became the purchasers, and gave their joint
note for the deferred payment; and the sale was reported to the Chan-
cery Court, as required by the statute, and was confirmed; and after-
wards, in order to enable the executor to settle with the other devisees
and distributees, the purchasers gave him receipts for their distributive
shares of the estate, at an agreed valuation, in part payment of the note,
and a new joint note for $2,500, balance of purchase-money in excess of
agreed valuation; and he thereupon reported the purchase-money paid
in full, executed a conveyance to the purchasers under the order of the
court, and charged himself with the purchase-money on final settlement
of his accounts; and four of the purchasers paid their proportion of the
$2,500, but the fifth failed to pay any part of her proportion, the arrange-
ment made by her husband for its payment having failed by reason of
his misrepresentations to the executor; *held*, that the compromise, or
settlement of the original note, was a novation of the contract, and dis-
charged the land which, on subsequent division by agreement among
the purchasers, was allotted to the defaulting distributee, from a vendor's
lien for the unpaid balance.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 14th February,
1882, by Robert S. Williams, against Mrs. Sallie McCarty and
her husband, M. F. McCarty, or Fletcher McCarty; and sought
to enforce a vendor's lien on a tract of land, for an alleged bal-
ance of purchase-money remaining unpaid. A demurrer was
interposed to the original bill, which was overruled by the
chancellor; but his decree was reversed by this court on appeal,

and the cause was remanded, in order that the complainant might have an opportunity to amend his bill, if he desired to do so.— *Williams v. McCarty*, 69 Ala. 174. The bill was accordingly amended by striking out some allegations in the 4th, 5th, 6th, and 7th paragraphs, and inserting and adding others. The 1st paragraph alleged, that the complainant, as the executor of the last will and testament of James H. Judkins, deceased, on the 22d January, 1872, sold the lands belonging to said estate, under an act of the General Assembly approved December 19th, 1871, "for the purpose of making a distribution and division among the devisees of the said deceased." The 2d paragraph alleged, that Mrs. Sallie McCarty was one of the devisees under the will of the deceased, and entitled to one-twentieth part of the whole estate ; "that at 'said sale, the said Sallie McCarty, acting through her said husband, Fletcher McCarty, united with her sisters, Virginia D. Judkins, Elizabeth Murray (wife of Alfred Murray), and Mary Dixon (wife of George W. Dixon), and with her brother, W. T. Judkins, and jointly purchased a large plantation, part of said lands, known as the 'Judkins Ferry plantation,' containing 2,126 acres, at the aggregate sum of $16,651.50 ; that the terms of said sale were, one third of the purchase-money to be paid in cash, and the balance in one and two years, with interest from date of sale ;" that the sale was duly reported to the Chancery Court at Montgomery, in which the estate of said Judkins was then in process of administration, and was confirmed by the court. The 3d paragraph alleged, " that the said purchasers did not pay any cash on their said purchase, but gave complainant their several receipts for so much of their distributive interests in said estate as was equal in the aggregate to the cash payment they were required to make by the terms of sale, and for the credit portion of their said purchase they executed to complainant, as such executor, their two joint promissory notes, signed by said W. T. Judkins, Virginia D. Judkins, Sallie McCarty, M. F. McCarty, Elizabeth A. Murray, and Mary N. Dixon," each for $5,634.15, dated January 23d, 1872, and payable January 22d, 1873, and 1874, respectively. The other paragraphs of the bill, as amended, were in these words :

" 4. That said credit portion of said purchase-money, evidenced by said promissory notes, remained unpaid until April, 1876, when certain other of the devisees of said estate, who had not purchased any land at said sale, and who were entitled to have their distributive shares of said estate paid in cash, being about to institute proceedings to have said lands sold for the payment of the balance of the unpaid purchase-money, or to compel your orator to do so, by requiring him to account to them for the whole of said purchase-money as cash ; and when

[Williams v. McCarty.]

it was evident that said lands would not, by many thousands of dollars, by reason of a decline in the value and price of lands, pay the balance due on them ; your orator agreed with said purchasers that, if they would transfer to him, in full, their several distributive shares in said estate, he would give them credit for all the balance due on said purchase-money notes, except the sum of $2,500, and that, on the payment of this sum, they were to have a title to said land, and your orator was to settle the claims of the devisees who had not purchased property of said estate, and who did not owe the estate any thing, out of his own means, or in such way as to protect the said purchasers from disturbance by them.

" 5.    That the liability resting on the said several purchasers, by reason of their said purchase and execution of said notes, was equal on each ; that the payments made by each of them were exactly equal, and the balance of $2,500 still remaining unpaid on said notes was, in equity, a liability on each one of said parties primarily to pay $500 of said amount, although they were all jointly and severally bound to pay the whole of said $2,500 ; and your orator therefore looked to each of said parties, as principal, for the payment to him of $500 of said debt ; which was done by all of them, except the said Sallie McCarty and her husband.   And your orator avers that, if said debt for said land had been collected by legal proceedings, or said land re-sold for the payment thereof, and the same course pursued as to the other purchasers of lands at said sale, and an actual distribution of the assets of said estate made, the said Sallie McCarty and her brother and sisters jointly with her in the said purchase would have lost their lands, and would have received very little or nothing, for their distributive shares in said estate ; because, by reason of the decline in the value of land after said sale, the assets of said estate, consisting mostly of lands, would have been very small, and their debts to said estate would have been so large as almost to absorb their respective distributive interests ; and so your orator says it was greatly to the interest, and still is greatly to the interest of the said Sallie McCarty, and of the other devisees who were joint purchasers with her, to carry out the terms of said compromise and agreement.

" 6.    That said M. F. McCarty was the guardian of Robert Judkins, a child of W. T. Judkins, who was an infant distributee of the estate of said James H. Judkins ; and said McCarty represented to your orator that he (said McCarty), as guardian of said Robert Judkins, had paid out large sums of money for said minor, for which he had vouchers largely in excess of the sum of $500, and which were a good claim against the interest of said Robert Judkins in said estate, and would answer the

same purpose as money to your orator in making his final set-tlement of said estate, and that he, as such guardian, would allow to your orator, as such executor, a credit for said sum of $500.; and your orator, believing said representations to be true, reported to said Chancery Court that all of said purchase-money had been paid; which it would have been in fact, if the state-ments of said McCarty had been true. Said report was made on the 24th July, 1876; and said Chancery Court thereupon made an order, directing that deeds to the lands purchased by them at said sale should be made to the purchasers thereof, or to such other person as they might direct; and thereupon your orator did execute a deed to said tract of land so purchased at said sale, to the said Sallie McCarty and the other purchasers thereof; and your orator avers that, in his accounts as executor with said estate, he has charged himself with the whole of the purchase-money agreed to be paid for said lands by the said purchasers, and has fully accounted for the same to the said estate; but that in fact the said Sallie McCarty owes to him the balance of $500 of the said purchase-money above her distribu-tive interest in said estate, with interest thereon from April 4th, 1876, by reason of the fact that said M. F. McCarty did not have the said vouchers or claims against said Robert Jud-kins which he had represented to your orator that he had, and was not able to allow to your orator the credit which he had stated he would do, and in fact did not allow your orator any credit whatever on account of said $500; and no part of said $500 has ever been paid to your orator by any person, and your orator still holds the said original purchase-money notes, and has never made any change in said debt, or in the liability of any of the parties to said original notes.

"7. Said purchasers have made a division and partition of said lands among themselves, and said Sallie McCarty now owns, of said lands, in severalty, by and through said partition and division, the following portion of said plantation." des-cribing it, "being a part of the said tract so purchased by her and her brother and sisters; and your orator is informed and believes that, if he proceeded to enforce his said lien against the whole of said lands, all the other parties would require him to first proceed against Mrs. McCarty's share of said lands for the payment of said balance, and, if that should be sufficient for the payment of the same, that he should not disturb their land, or claim any thing from them, and that he might be taxed with the costs of the parties unnecessarily brought into said litigation; and for this reason, as Mrs. McCarty's land is amply sufficient to satisfy his demand, your orator does not make any other of said purchasers parties to this bill."

The chancellor sustained a demurrer to the bill as amended,

[Williams v. McCarty.]

and dismissed it for want of equity; and his decree is now assigned as error.

GUNTER & BLAKEY, for appellant.—That a vendor's lien on the land, for the payment of the original notes, was retained, can not be doubted; and that lien must still exist, unless it has been discharged, or released, by the subsequent dealings between the parties. The executor has reported the purchase-money as paid in full, and has accounted for it to the distributees of the estate; and he has thus acquired the right to enforce the vendor's lien in his own name.—*Rather v. Young*, 56 Ala. 94; *Waldrop v. Pearson*, 42 Ala. 636; *Hall v. Chenault*, 13 Ala. 710. His report of the payment of the purchase-money, and the action of the court in ordering a conveyance to the purchasers, even if the court had jurisdiction to make such order, do not estop him, as against the purchasers, from denying the fact of payment, and enforcing his lien for the unpaid balance. *Wallace v. Nichols*, 56 Ala. 321; *Stabler v. Spencer*, 64 Ala. The lien on the land has not been released, nor discharged; the unpaid balance is a portion of the purchase-money; there has been no change in the liability of any of the parties, and no new security has been taken. The substitution of a new note for the unpaid balance of $2,500, executed by the same parties, did not work any change in their liabilities or relations. For the new note, as for the original notes, each purchaser was jointly bound; and the liability of each was the same—that is, he was bound as principal for his own part of the joint debt, and as surety for the others for their respective parts. The complainant might have filed his bill against all of them jointly, to subject the entire tract of land to the payment of the balance due; but, if he had done so, the defendants who had paid their full part of the debt, and were only liable as sureties for the defaulter, might have filed a cross-bill, and compelled him to first sell the land allotted in severalty to the defaulter.—*McGehee v. Owen*, 61 Ala. 144; *Martin v. Baldwin*, 7 Ala. 923; *Corbitt v. Clenny*, 52 Ala. 483. If the parties have voluntarily done what a court of equity would have compelled them to do—resolved their original joint contract into its natural equities, severing their respective interests and liabilities—a court of equity will sanction and give effect to the transaction.

ARRINGTON & GRAHAM, *contra*, cited *McCarty v. Williams*, 69 Ala. 174; and *Sims v. Sampey*, 64 Ala. 230.

STONE, J.—When land is sold and conveyed, leaving the purchase-money, or a part of it unpaid, there is a lien on the land in favor of the vendor, as security for the unpaid pur-

chase-money. This is the general rule, and it rests on the principle, "that a person who has gotten the estate of another, ought not in conscience, as between them, to be allowed to keep it, and not to pay the full consideration money." This lien is said to be the mere creature of equity. Certainly, equity first gave it vitality, and that court alone can administer and enforce it. It springs, as matter of law, out of the contract itself, and is not dependent on any expressed term of the contract. In *Bankhead v. Owen,* 60 Ala. 457, we considered its nature, and our prior rulings upon it, and we have no wish to enlarge upon what is there said, upon the questions there discussed.

The rule has exceptions. If an independent security be taken, our rulings are that, unexplained, this amounts to proof that no lien on the land was retained.—*Foster v. Athenæum,* 3 Ala. 302; *Walker v. Carroll,* 65 Ala. 61. There are some varying and conflicting decisions in England, on what is sometimes asserted as another exception to the rule. They are collected and commented on in 1 Leading Eq. Cases, 4th ed., pages 311* *et seq.* We deem it unnecessary to consider them, as the point of dispute and discrepancy arising in them is not presented in this case. They show, however, that whenever the conduct and dealings of the parties, in reference to the transaction, are not reconcilable with the idea that a lien was intended to be retained, then there is no lien.—See, also, 1 Jones on Mortgages, § 198; 3 Pom. Eq. Jur. § 1252, and notes. This court has gone very far in upholding the vendor's lien.—*Buford v. McCormick,* 57 Ala. 428; *Carver v. Eads,* 65 Ala. 190; *Wilkinson v. May,* 69 Ala. 33; *Young v. Hawkins,* at the present term.

This is the second time this case comes before us.—*McCarty v. Williams,* 69 Ala. 174. It is contended for appellant, that his amendment of the bill, after the case returned to the Chancery Court, takes it out of the operation of the principles declared on the former hearing. The most important of the amendments is, that when the compromise was made, and the new note given, the original purchase-money notes, signed by all the purchasers, were not surrendered, and are still in the possession of the complainant. Now, if those original notes are binding at all, they are binding on all the parties, and operate a lien on all the land. This would hardly be contended for. And if proceedings were instituted upon them, the other four purchasers could successfully defend both themselves and their lands against recovery. The true construction of the compromise contract is, that Williams agreed to surrender the original purchase-money notes, to convey the land, and to trust the five several purchasers, each for his share or proportion of the bal-

ance of the purchase-money. In support of this view, it is shown in the bill that McCarty represented to Williams that a sufficient sum was due him, McCarty, from his ward, whose estate Williams held, to pay such agreed balance; and the bill avers that Williams, relying on McCarty's representation, accepted the individual note of McCarty. This, we think, amounts to a novation, and repels all idea that any lien was retained. We adhere to our former views.—*McCarty v. Williams,* 69 Ala. 174; *Sims v. Sampey,* 64 Ala. 230; s. c., 58 Ala. 588; *Thames v. Caldwell,* 60 Ala. 644.

The decree of the chancellor is affirmed.