# Phillips *v.* Adams.

### *Bill in Equity to enforce Vendor's Lien on Land.*

1. *Vendor's lien; when stale demand.*—A vendor's lien on land, when no conveyance to the purchaser is executed, does not become a stale demand until the lapse of twenty years after the sale.

2. *Same; presumption and proof of payment.*—A legal presumption of payment does not arise from mere lapse of time, until after the lapse of twenty years, without payment of interest, or any other recognition of indebtedness on the part of the debtor; yet positive evidence of payment is not required, but it may be established by circumstances, such as would satisfy a jury that the continued existence of the debt was highly improbable; as in this case, where the vendor, though in necessitous circumstances, did not file his bill to enforce a lien on the land, until after the lapse of nineteen years from the date of the contract, and fourteen years after the death of the purchaser, and showed no excuse for his delay.

APPEAL from the Chancery Court of Elmore.

Heard before the Hon. J. M. FALKNER, as special chancellor.

The original bill in this case was filed on the 18th July, 1881, by Samuel G. Adams, against Mrs. Sarah A. Phillips, as executrix of the last will and testament of her deceased husband, James D. Phillips, and as sole devisee and legatee under its

15

provisions; and sought to enforce an alleged vendor's lien on a tract of land, which the complainant sold to said James D. Phillips, on the 31st December, 1861, at the agreed price of $1,400, executing to him a bond for titles, a copy of which was made an exhibit to the bill, and which was conditioned as follows: "Whereas I have this day sold to J. D. Phillips the following lands: the undivided one-half of the east half of section ten (10), township twenty (20), range twenty-one (21), except that part north of the creek and above the branch, containing 240 acres, more or less, known as the 'Mill tract,' with the saw and grist mill thereon attached: Now, if I make to the said Phillips good and lawful titles to the said premises, then this bond to be void," &c.

The original bill alleged that Phillips was placed in possession of the land under this contract, and continued in possession thereof until his death in 1866; that his widow, as executrix and sole devisee, continued in possession up to the filing of the bill, and that the purchase-money, "in whole or in part, has never been paid to this day." The defendant demurred to the bill, assigning as causes of demurrer—1st, want of equity; 2d, the statute of frauds; 3d, staleness of demand; and, 4th, statute of limitations. The special chancellor overruled the demurrer, on all the grounds assigned; but his decree was reversed by this court on appeal, on the ground that the alleged contract was obnoxious to the statute of frauds, and the cause was remanded.—*Phillips v. Adams*, 70 Ala. 373. The complainant then amended his bill, by alleging that $900 of the purchase-money was paid in cash at the time of the sale, and claiming a vendor's lien for $500 as the unpaid balance. The defendant answered the amended bill, demurring to the amendment, "because it is not germane to the original bill, and is wanting in equity;" pleading the statutes of limitation of ten and twenty years, and alleging payment of the purchase-money. The cause being submitted for final decree, on the bills original and amended, answer and cross-bill, and exhibits, the special chancellor dismissed the bill, on the ground that the contract sought to be enforced was a stale demand; but his decree was again reversed by this court on appeal, and the cause was remanded.—*Adams v. Phillips*, 75 Ala. 461. After the remandment, the cause being submitted for final decree on pleadings and proof, the special chancellor held the complainant entitled to relief, and rendered a decree in his favor; and this decree is now assigned as error by the defendant.

Jno. A. Terrell, and W. D. Bulger, for appellant.

Watts & Son, and Parsons & Kelly, *contra*.

[Phillips v. Adams.]

CLOPTON, J.—The lien of a vendor of land, when no con-
veyance is executed, is regarded in the nature of a mortgage,
and is not impaired or destroyed, because an action at law for
the purchase-money may be barred by the statute of limitations;
and it does not become a stale demand, if a bill in equity to
enforce the lien is filed within less than twenty years after the
sale. The legal presumption of payment, from mere lapse of
time, does not arise until after the expiration of twenty years,
without payment of interest, or any recognition of the indebt-
edness on the part of the debtor. These rules, though conceded,
do not preclude the conclusion of payment within a less pe-
riod than twenty years, when justified by all the evidence in
the particular case. Positive evidence of payment is not re-
quired. It may be established by circumstances—not as a pre-
sumption, but as a conviction of its truth produced by the at-
tendant circumstances proved, inconsistent with the continuance
in force of the indebtedness. Mr. Wharton observes : " It is
so improbable that a creditor would permit an unpaid bond to
lie fruitless for eighteen or nineteen years, that slight circum-
stances, in connection with such proof, will be sufficient, as a
presumption of fact, to justify a jury in a conclusion of fraud."
2 Whar. on Ev., § 1360; *Lipscomb v. DeLemos*, 68 Ala. 592.
The impossibility is increased, when taken in connection with
the facts of the debtor's solvency, and of a lien on the land for
the payment of the debt.

It appears that Phillips and complainant were joint owners
of the land, and partners in operating a mill located thereon.
The purchase was of complainant's half interest in the prop-
erty, at the price of $1,400. There are substantial incongrui-
ties between the evidence of the witnesses for complainant,
and of the witness for defendant, as to what occurred at the
time of the contract of sale. The version given by complainant
and his witnesses is, that nine hundred dollars of the purchase-
money were paid with two notes secured by a mortgage, which
complainant owed Phillips; that Phillips, having left one of
the notes, promised to bring it on the following Monday, and
pay $300 in money and $200 in mill accounts due to Adams &
Phillips, which he was to indorse; that complainant, on Sun-
day, delivered possession of the property to the miller whom
Phillips sent for that purpose; and that Phillips did not return
on Monday, and was not at the mill until the succeeding July
or August, on which occasion complainant demanded payment
of the money and indorsed accounts, which Phillips refused;
and the mill accounts were divided between them. Porter,
who was examined by defendant, testified that Phillips, being
dissatisfied with the management of the business, proposed
to sell or buy, and finally complainant agreed to sell. Com-

plainant not having titles to the land, it was agreed that he would go in a few days to Talladega and get a deed, and when he did so, they would have a settlement of the matters between them; that Phillips said to complainant, he owed him a sufficient amount to cover the purchase-money, to which complainant made no reply; and a few days thereafter complainant delivered to witness, as agent for Phillips, possession of the property, remarking that he had nothing more to do with it, and that it was Phillips' property. Mrs. Phillips also testified, that, about the same time, she heard her husband say to complainant that he had not received his portion of the rents for the three preceding years, and that complainant owed him more than his half interest in the property was worth, to which complainant made no reply.

The witnesses testify to facts and declarations which occurred more than twenty years previously; and in view of their conflicting statements, the attainment of a satisfactory conclusion on the issue of payment *vel non* will be assisted by a consideration of the undisputed facts; especially the cotemporaneous writings, the accuracy of which is not dependent upon imperfect recollection. On February 26, 1861, complainant executed to Phillips two notes for the aggregate sum of $940.35, bearing interest from the first of January preceding, and a mortgage on the property sold to secure their payment, and also to secure to Phillips sundry accounts or notes belonging to Adams & Phillips, which were in the hands of complainant. By the mortgage, complainant admitted his indebtedness to the amount of the notes, and possession of accounts or notes in which Phillips had an interest, for which he was liable to account. The law-day of the mortgage was December 25, 1861; and the contract of sale was made December 31, 1861. There is no evidence that complainant, in the meantime, paid any thing on the notes, or accounted for any part of the accounts or notes in his hands, proof of which, if he had done so, was incumbent on him.

At the time of the contract of sale, the amount due on the mortgage notes, inclusive of interest, exceeded $1,000, leaving less than four hundred dollars to be paid, the purchase-money being $1,400. A promise to pay on the following Monday five hundred dollars in money and indorsed accounts involves a release of the amount due on the mortgage notes in excess of nine hundred dollars, and a release of the liability to account for the notes or accounts belonging to Adams & Phillips, that were secured by the mortgage. There is no pretense of evidence that Phillips made either release, and no reason or explanation is assigned as to the probability or presumption of his having done so. The inquiry is pertinent, why should

Phillips have agreed to indorse mill accounts to the amount of two hundred dollars, in part payment of the purchase-money, when he held a mortgage on the same property to secure accounts in complainant's hands? Why not let him retain those he had, when they were secured by his mortgage? Why should Phillips release the security he held, and at the same time incur an additional liability, by indorsing the accounts? In addition, on the day of the sale complainant give Phillips a bond, conditioned to make, or caused to be made, title to the property within one year, or as soon as complainant obtained titles. The terms of the bond tend to corroborate the evidence of Porter, that the bond was given because complainant did not have a title, and a settlement was to be made when he procured a deed. The obligation is absolute and unconditional. There is no expressed condition based on the payment of any purchase-money: there is no reservation of a lien. It is unreasonable that complainant would have given such bond, with five hundred dollars of the purchase-money unpaid, not evidenced by any writing.

There is an absence of evidence, other than the testimony of complainant and his wife, as to what occurred in July or August succeeding the sale, of any call or demand for payment, either on Phillips during his life-time, or on his executrix, until the bill was filed, July 18, 1881, or of any settlement of their partnership matters. A few months longer, and the law would have presumed payment from the mere lapse of time. The complainant, though the evidence shows his necessities required money, acquiesced in the non-payment, and suffered his claim to remain fruitless, not only until an action at law for its recovery is barred, but until within a few months of the period when his demand would have been regarded as stale in equity; and in the meantime a division of the mill accounts is made between them. All the circumstances, in connection with the unexplained long acquiescence, force the conclusion that there was a settlement and payment of the purchase-money.

Reversed, and a decree will be here rendered dismissing the bill.