# Overall *et al. v.* Taylor.

*Bill in Equity to Enforce Vendor's Lien.*

1. *Notice of vendor's lien to sub-purchaser.*—A sub-purchaser of land, knowing that a part of the purchase-money is unpaid, is put on inquiry as to the existence of the vendor's lien, and is chargeable with notice of it, if still outstanding.

2. *Notice of vendor's lien to mortgagee; when superior to mortgage.* Where a mortgage is executed to a firm, knowledge by one of them that the mortgagor had failed to pay at least part of the purchase price is sufficient to put the mortgagees on inquiry; and where such inquiry, prosecuted with diligence, would have led to the discovery that no part of the purchase-money had been paid, and that the mortgagor's vendor had retained a lien on the land for the full amount of the agreed price, the vendor's lien is superior to the mortgage.

3. *Same; when mortgagee's duty to inquire of vendor.*—An inquiry by the mortgagees from the mortgagor and a denial by him of the existence of any lien on the land is not sufficient to entitle the mortgagees to protection as *bona fide* purchasers, since it was their duty to

[Overall et al. v. Taylor.]

inquire directly from the vendor ; the mortgagor being interested adversely to the vendor's lien.

4.   *Purchaser at execution sale subsequent to execution of mortgage acquires only an equity, which is subordinate to vendor's lien.*—A purchaser at an execution sale, made subsequent to execution of a mortgage by the judgment debtor, acquires only the equity of redemption left in the mortgagor, and, having no legal title, and his equity being subsequent in point of time to that of the mortgagor's vendor, he is not entitled to protection against the vendor's lien as a *bona fide* purchaser, though he had no knowledge or notice whatever of its existence.

5.   *Equitable estate purchased by mortgagee with notice does not give priority over vendor's lien.*—The fact that the mortgagees, whose title was itself subordinate to the vendor's lien, because of their knowledge of its existence, acquired the equitable estate of the purchasers at the execution sale, cannot give them priority over the vendor's lien.

6.   *Notice to one partner of non-payment of purchase-money is notice to each member of the firm.*—Where land is purchased by a partner, having notice of the non-payment of the purchase-money, for the benefit of the firm, each member is chargeable with such notice of the non-payment of the purchase-money and the retention of a vendor's lien ; and one of them who subsequently acquires the land as his individual property, can not claim protection against the vendor's lien as a *bona fide* purchaser.

APPEAL from Chancery Court of Mobile.

Heard before the Hon. W. H. TAYLOE.

The bill in this case was filed by the appellee, Elijah S. Taylor, on August 13, 1888, against Thomas P. Miller & Co. and the individual members of said firm, and Samuel Timney, Mary L. Timney, R. D. Byrne, and Frank E. Overall, as assignee of Thos. P. Miller & Co.

The purpose of the bill was to enforce a vendor's lien on certain property, which was specifically described therein. It was averred in the bill that on August 1, 1883, the complainant sold and conveyed by deed to R. D. Byrne, the lands upon which the vendor's lien was sought to be fastened for the recited consideration of $1,250.00. None of the purchase-money was paid, but Byrne executed to Taylor his two promissory notes for $625.00 each, dated August 1, 1883, and payable, respectively, one and two years after date. On December 22, 1883, the said R. D. Byrne, individually, and certain firms, of which he was a member, executed a mortgage to Thos. P. Miller & Co., to secure the payment of advances made to said Byrne and the said firms, and in this mortgage conveyed to said Miller & Co. the lands purchased by Byrne from Taylor, with other lands.

On December 17, 1884, Thos. P. Miller & Co., as mortgagees, claiming that the mortgage was in default, took possession of the property conveyed therein, and on the same day, entered into a contract of sale for said lands with the

[Overall et al. v. Taylor.]

firm of Worthington & Timney, a co-partnership composed of Chas. M. Worthington and Samuel Timney, the said Timney being a member of the firm of Timney, Riley & Co., one of the firms who executed the above mentioned mortgage to Thos. P. Miller & Co., and of which firm the said Byrne was also a member. In furtherance of this agreement Thos. P. Miller & Co. executed a deed to said Worthington & Timney, on January 19, 1885, conveying the property included in the mortgage; and took a mortgage back from said Worthington & Timney upon the same lands, to secure the payment of the purchase-money.

On January 5, 188., the said Worthington & Timney having made default in the payment of said purchase-money for the lands, Thos. P. Miller & Co. sold said property at public outcry, and Charles B. Miller, one of the members of the firm of Thos. P. Miller & Co., became the purchaser thereof. A deed to said lands was duly executed by Miller & Co. to Charles B. Miller, and on January 13, 1886, the said Charles B. Miller conveyed the same property by quit-claim deed back to Thos. P. Miller & Co. After the purchase of said lands from Charles B. Miller, as aforesaid, the said Thos. P. Miller & Co., on October 20, 1887, sold and conveyed the same property to said Samuel Timney, a part of the purchase-money being paid in cash, and notes given for the balance. On the same day, October 20, 1887, the said Samuel Timney executed a mortgage on said lands to his wife, Mary Timney, to secure the payment of an indebtedness of said Samuel Timney to his said wife, he claiming that the money paid in cash to Miller & Co. was borrowed from his wife, who expected to make the deferred payments.

On March 27, 1888, Thos. P. Miller & Co. made a general assignment for the benefit of creditors to Frank E. Overall, of all the property owned by them, including the notes for the unpaid purchase-money, due by the said Timney to the said Thos. P. Miller & Co., for the lands which had been sold by them to said Timney.

It was further averred in the bill that at the time of giving the mortgage to Thos. P. Miller & Co., by R. D. Byrne, Timney, Riley & Co. and others, on December 22, 1883, the said Miller & Co. had due notice that the purchase money had not been paid to the complainant, E. S. Taylor, by R. D. Byrne, and that, therefore, the complainant had a lien upon a portion of the land, which was included in the mortgage; and this averment was made repeatedly, and in different ways, throughout the bill.

[Overall et al. v. Taylor.]

In their answer to the bill by Samuel and Mary Timney, and Frank E. Overall as assignee, notice of the non-payment of the purchase-money by Byrne to Taylor was denied, and it was alleged in said answers that Thos. P. Miller & Co. and their sub-vendees were *bona fide* purchasers without notice. It was also averred in said answers, and shown by the evidence, that on June 10, 1884, Camors & Co., a mercantile firm, recovered a judgment in the United States Circuit Court at Mobile, against R. D. Byrne ; that execution was issued on this judgment, and was levied by the United States marshal on the land involved in this controversy; that the said lands were sold under said execution, at which sale Camors & Co. became the purchasers, and that a deed was executed by the United States marshal to said Camors & Co. dated December 4, 1884; that in January, 1885, the said Camors & Co. sold the title to the land acquired by them at said sale, to said Thos. P. Miller & Co., and that at the time of the marshal's sale and purchase by them, and their sale to Thos. P. Miller & Co., Camors & Co. had no notice whatever of the claim of said Taylor against the said lands.

The testimony of the complainant, E. S. Taylor, and the said R. D. Byrne, tended to show that at the time of the execution of the mortgage to Thos. P. Miller & Co. on December 22, 1884, Miller & Co. were notified that Taylor had never been paid for his lands. The said Byrne testified that at the time of giving said mortgage he said to Charles B. Miller, one of the firm of Thos. P. Miller & Co., when asked about the Taylor land, that he, Byrne, had never paid any of the purchase-money for said land, but that it was worth four times as much as he agreed to give for it, and that if Miller & Co. would pay the purchase-money notes, he would be willing to include the said land in the mortgage ; and that upon this representation, Miller said that they would arrange the matter satisfactorily, and included the land in the mortgage.

These facts were denied by the respondents, and in the deposition of Charles B. Miller, he testified that said Byrne had made no such statement to him, but that he knew that a part of the purchase-money, which Byrne had agreed to pay to Taylor for the land in question, had not been paid.

Upon the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was entitled to the relief paid for. This decree is now appealed from, and the same is here assigned as error.

[Overall et al. v. Taylor.]

OVERALL & BESTOR for appellants.—If Camors & Co. were *bona fide* purchasers without notice, Miller & Co., who bought their title, hold under them as *bona fide* purchasers without notice.—*Cahalan v. Monroe, Smaltz & Co.*, 56 Ala. 303; *Bartlett v. Varner*, 56 Ala. 580. The conveyance from Taylor to Byrne being absolute, and reciting therein the payment of the purchase-money, the *onus* of proof of notice is on Taylor.—*Hightower v. Rigsby*, 56 Ala. 126; *Wynn v. Rosette*, 66 Ala. 517. A *bona fide* purchase for a valuable consideration without notice will defeat the vendor's lien.—*Turner v. Wilkinson*, 72 Ala. 361; *Bankhead v. Owen*, 60 Ala. 457. A purchaser at a sale under a mortgage, although having actual notice of an outstanding equity, may nevertheless take advantage of the want of notice on the part of the mortgagee, since otherwise the mortgage would be a worthless security. *Cahalan v. Monroe*, 56 Ala. 303; *Bartlett v. Varner*, 56 Ala. 580. An innocent mortgagee, who parts with value *in presenti*, or incurs an obligation to do so *in futuro*, stands, in the eyes of the law, as if he were a vendee of the absolute title, and is entitled to equal protection.—*Rogers v. Adams*, 66 Ala. 600; *Wheelan v. McCreary*, 64 Ala. 319; *Coleman v. Smith*, 55 Ala. 368.

CLARK & CLARK, *contra*, cited *Webb v. Robbins*, 77 Ala. 183; *Hodges v. Coleman*, 76 Ala. 103.

McCLELLAN, J.—It is not necessary to a decision of this case that we should undertake to arrive at the truth between the witnesses Byrne and Charles B. Miller, as to whether the former informed the latter before the execution of the mortgage, under which Thomas P. Miller & Co. claim to be *bona fide* purchasers without notice of the land involved here, that no part of the purchase-money therefor had been paid and that Taylor, Byrne's vendor, had a lien on the land for its payment. That inquiry aside, it is most clear from the testimony of Charles B. Miller himself that he, and of consequence the firm of Thomas P. Miller & Co., for which he was acting and of which he was a member, had notice, at and before the execution of the mortgage, that a part, at least, of the purchase-money which Byrne had agreed to pay Taylor for the land in question had not been paid. Knowledge on the part of Miller & Co. of this fact put upon them the duty of inquiry which, if diligently prosecuted, we can not doubt would have led to the discovery, first, that no part of the purchase-money had been paid, and, second, that Taylor retained a vendor's lien on the land

[Overall et al. v. Taylor.]

for the full amount of the agreed price; and it follows that Miller & Co. must be held to notice of Taylor's lien at the time they claim to have purchased without said notice. *Lomax v. LeGrand*, 60 Ala. 537; *Feaster, Neville & Co. v. Stallworth et al.*, 62 Ala. 547; *Taylor v. A. & M. Ass'n.*, 68 Ala. 229; *Rosette v. Wynn*, 73 Ala. 146; *Webb v. Robbins*, 77 Ala. 176; *Woodall v. Kelly*, 85 Ala. 368; *Thompson v. Sheppard*, 85 Ala. 611.

The fact, if it be one, that Byrne assured Miller & Co. that his vendor had no mortgage or lien on the land to secure the payment of the purchase-money did not relieve them from this duty of further inquiry, nor change in any degree the legal results flowing from its omission. Byrne's deed was notice to them of the identity of his vendor, and the inquiry should have been made of him. No inquiry from Byrne alone nor information given by him in denial of the existence of a lien would meet the requirements of the rule, he being interested adversely to the lien.—2 Pom. Eq. Jur. § 601; *Simpson & Hall v. Hinson*, 88 Ala. 527; *Manasses v. Dent*, 89 Ala. 565; *Weil v. McWhorter*, 94 Ala. 540; 10 So. Rep. 131.

The judgment recovered by Camors & Co. against Byrne and another, the issuance of execution thereon, the levy thereunder on the land in controversy, the sale of the same, and its purchase by the plaintiffs in that action all occurred after the execution of the mortgage by Byrne and others to Miller & Co. This mortgage carried the legal title into Miller & Co., and left in Byrne only the right to reinvest himself with the title by meeting the conditions of the mortgage —the equity of redemption and nothing more. This equitable estate alone could have been and was levied upon and sold under the judgment of Camors & Co., and they acquired only this equity in the land. To this equity, the claim of Taylor for unpaid purchase-money was prior in point of time. On this state of the case Camors & Co. were not entitled to protection against Taylor's lien as *bona fide* purchasers without notice, and this, wholly regardless of the fact that they had no knowledge or notice whatever of the existence of such lien. One essential factor in their right to protection against the latent equity of Taylor is lacking, in that they did not acquire the *legal title* by their purchase at the marshal's sale. Without this they had a mere equity which, being subsequent in point of time to Taylor's, is subordinate to the lien for purchase-money. "The whole principle on which protection is afforded a *bona fide* purchaser," said Brickell, C. J., "proceeds on the sub-

2

stantial reason, that by parting with a valuable considera-
tion he has acquired an equity equal in dignity to the out-
standing equity of which he has no notice. As a mere
equity, that he acquires must be subordinate to older equi-
ties, but annexed to it is the legal estate, and it is the legal
estate which gives him precedence. In *Hinds v. Vattier*,
7 Pet. 271, C. J. Marshall said: ' The rules respecting a
purchaser without notice are framed for the protection of
him who purchases a legal estate, and pays the purchase-
money without knowledge of an outstanding equity. They
do not protect a person who acquires no semblance of title.
They apply fully only to the purchaser of the legal estate.
Even the purchaser of an equity is bound to take notice of
of any prior equity.' "—*Shorter v. Frazer*, 64 Ala. 74. And
the same doctrine is declared in the following cases: *Craft
v. Russell*, 67 Ala. 9; *Hooper v. Strahan*, 71 Ala. 75; *May v.
Wilkinson*, 76 Ala. 543; *State v. Connor*, 69 Ala. 212.

Our conclusion that Camors & Co. were not entitled to
protection as *bona fide* purchasers without notice might
probably be rested on other grounds as well as that stated,
but that one will suffice for a decision of the case. Camors
& Co., therefore, held this equity of redemption precisely
as Byrne had held it—subordinate to Taylor's vendor's lien;
and it was this inferior equity alone which Miller acquired
from them; and, in their hands, it can no more aid their
defense of *bona fide* purchase without notice than had they
taken an absolute deed from Byrne in the first instance with
notice of the lien, or had cut off, and thus acquired, by fore-
closure Byrne's equity of redemption having had notice of
the lien when the mortgage was taken. Indeed, it is not
conceivable how the position of Miller & Co. could in any-
wise be helped by drawing to their legal title, which was
itself subordinate to Taylor's lien, because of their knowl-
edge of the lien, an equity which was secondary to the com-
plainant's, regardless of notice *vel non*. They, in other words,
had no rights against the complainant by reason of their
legal title, and that title may, therefore, be left out of view ;
and they had no rights against him on their purchase from
Camors & Co., because they acquired a mere inferior equity
thereby, and because also they took that with notice of
complainant's dominant equity.

The claim of Timney to protection as a *bona fide* pur-
chaser without notice is equally without merit. The evi-
dence shows that the land was purchased by Byrne from
Taylor as a member of and for the firm of Timney, Riley &
Co., of which both Byrne and respondent Timney were mem-

bers, and that it became the assets of that firm.    Each member of that partnership is, therefore, chargeable with notice of the non-payment of the purchase-money, and the retention of a lien therefor by Taylor.—17 Am. & Eng. Encyc. of Law, pp. 1080–1083.

The claim of Mrs. Timney is not insisted on in argument. As was said by the chancellor, nothing material is offered in support of her alleged interest; and there was no error in disallowing her claim to protection.

The decree of the Chancery Court is affirmed.