(85 South. 540)

**FOLMAR v. BEALL et al.　(4 Div. 848.)**

(Supreme Court of Alabama. April 22, 1920. Rehearing Denied May 27, 1920.)

**1. Vendor and purchaser ⟨⊘⟩265(2)—Recital of outstanding note notice of vendor's lien.**

The recital in a deed of an outstanding note for the purchase money carried notice of the vendor's lien to all persons claiming as purchasers.

---

⟨⊘⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. Contracts** ⟨⇒273—**Rescission must be in toto.**

Where a contract is rescinded, it must be rescinded in toto.

**3. Pledges** ⟨⇒38—**Transfer of note carries collateral, but same may be withheld.**

While, in general, the transfer of a note passes to the transferee the right of the transferor in collateral held as security, and the same rule is applicable to the assignment of a debt, yet the parties may agree otherwise and the assignor reserve the collateral.

**4. Fraudulent conveyances** ⟨⇒315(1) — **Decision held not to vest complainant with any rights in a note.**

Where complainant, who acquired a debtor's stock of goods and gave his note to a creditor, filed, in a suit by the creditor attacking a conveyance and setting up nonpayment of the note, a cross-bill, which asserted complainant was entitled to the delivery of a vendor's lien note received by the creditor as collateral, which was dismissed, and the appellate court reversed the decree, merely ordering that the creditor first exhaust his remedy against the vendor's lien note, such decision was in no sense an adjudication giving complainant any right or title to the vendor's lien note.

**5. Pledges** ⟨⇒44—**Settlement held to have discharged vendor's lien note.**

Where, to enable a firm to obtain credit, one member conveyed to it lands, taking back a vendor's lien note which was pledged for firm debts, *held* that transactions between the creditor and others operated as a discharge of the note, so that, though the creditor still held it, he had no enforceable rights therein which he could pass to an assignee.

**6. Adverse possession** ⟨⇒60(4) — **Disavowal necessary, where possession is in privity with title of rightful owner.**

When the original possession of the holder of land is in privity with the title of the rightful owner, in order to enable such holder to avail himself of limitations, nothing short of an open and explicit disavowal and disclaimer of holding that title and assertion of title in himself will satisfy the law, though if a mortgagor or vendor in possession sells to a third person he may hold it adversely to the mortgagee or vendee, since every trustee may repudiate his trust.

**7. Champerty and maintenance** ⟨⇒6(1) — **Transfer of vendor's lien note held champertous.**

A transfer of a vendor's lien note by a creditor after settlement, so that the creditor no longer was entitled to enforce it, for the sole consideration that the transferee pay one-fourth of any recovery he might obtain, is champertous.

Appeal from Circuit Court, Crenshaw County; A. E. Gamble, Judge.

Bill by George A. Folmar against J. H. Beall and others, to declare and enforce a vendor's lien upon certain real estate. From a decree for respondents, complainant appeals. Affirmed.

See, also, 199 Ala. 596, 75 South. 172.

The facts sufficiently appear from the opinion of the court.

W. A. Gunter and J. J. Mayfield, both of Montgomery, for appellant.

The lien is not created by an express or specific agreement, but rests in equity, independently of the agreement. 74 Ala. 295; 73 Ala. 248; 69 Ala. 33; 64 Ala. 496; 61 Ala. 530; 60 Ala. 457. The sale created a trust and a lien upon the money. 42 Ala. 31. The lien is preserved, though the statute of limitation has operated as a bar to the recovery of the debt. 128 Ala. 569, 30 South. 540, 86 Am. St. Rep. 159; 70 Ala. 347; Id. 100; 73 Ala. 248; 67 Ala. 274. The lien passed with the assignment of the note. 7 Ala. 318; 10 Ala. 441; 14 Ala. 169, 48 Am. Dec. 92; 58 Ala. 636; 202 Ala. 442, 80 South. 826; 84 Ala. 283, 4 South. 273; 168 Ala. 390, 53 South. 101; 77 Ala. 472. The real ownership and the legal title vests in the partnership, and not in individuals. 54 Ala. 363, 25 Am. Rep. 684; 80 Ala. 440, 2 South. 317; 81 Ala. 271, 2 South. 879; 117 Ala. 583, 23 South. 145. A purchaser is bound by the recitals in the deed in his chain of title. 44 Ala. 115; 56 Ala. 426; 57 Ala. 465.

F. B. Bricken, of Luverne, and Powell & Hamilton, of Greenville, for appellees.

Beall retained no vendor's lien when he conveyed to the partnership and took the $7,500 note. 70 Ala. 347; 98 Ala. 440, 13 South. 364; 106 Ala. 149, 17 South. 610; 154 Ala. 355, 45 South. 658; 164 Ala. 329, 50 South. 1025, 28 L. R. A. (N. S.) 607, 137 Am. St. Rep. 59, 20 Ann. Cas. 926; 39 Cyc. 1787–1794. Lehman-Durr Company's claim was settled before appellant's claim accrued. 78 Ala. 227. The partnership was released from liability on the note by the agreement between appellant and Coston to assume the Lehman-Durr Co.'s debt. 33 Ala. 659; 57 Ala. 579; 7 Mayfield, 793; 34 Cyc. 1081.

SAYRE, J. [1] In 1894 Beall & Coston, a partnership composed of J. W. Beall and T. W. Coston, the latter now deceased, were beginning a general mercantile business at Luverne in Crenshaw county. Beall was indebted to the Lehman-Durr Company, a corporation doing business at Montgomery. Beall & Coston needed funds and to raise them, Beall, who owned two lots on the main business street of the town, conveyed them to Beall & Coston, taking a promissory note for the sum of $7,500. The deed contained a recital that grantor did grant, bargain, sell, confirm, and convey the said lots "for and in consideration of the purchase-money note of Beall & Coston, dated April 2, 1894,

⟨⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and due November 1, 1894, for the sum of seventy-five hundred dollars," etc. This recital of an outstanding note for the purchase money carried notice of the vendor's lien to all persons claiming as purchasers. Shorter v. Frazier, 64 Ala. 74; Overall v. Taylor, 99 Ala. 12, 11 South. 738. Coston pledged the note with the Lehman-Durr Company as collateral, primarily to secure Beall & Coston's note of even date for $5,500, and perhaps to secure the personal indebtedness of J. W. Beall though this last fact is only important in an evidential way, as will later appear. The lots, through various mesne conveyances, found their way into the ownership of defendants J. H. and Duke Beall, sons of J. W. Beall. So far as concerns the legal title to the note, the Lehman-Durr Company was dissolved according to the statute in such cases made and provided, and at a sale of its assets Lee H. Weil, as trustee for Lehman, became the purchaser. April 23, 1914, Weil assigned said note to appellant, stipulating that appellant should pay to him one-fourth of any net sum he might be able to collect thereon. No other consideration passed from appellant to Weil. This bill, to enforce an alleged vendor's lien, was filed by appellant on October 3, 1914. On final hearing on pleading and proof the circuit judge, sitting in equity, dismissed the bill.

Appellant's right to maintain a suit on the note is affected by some further facts which should be stated. In the fall of 1894 Beall & Coston sold their stock of goods to appellant, and shortly thereafter the Lehman-Durr Company filed a bill against the parties to that sale, averring that it had been made in fraud of creditors. That suit was settled between the parties June 12, 1896, appellant giving his notes aggregating $3,733.71, and T. W. Coston his for $2,271, to secure the indebtedness of appellant and Beall & Coston to the Lehman-Durr Company, the company agreeing, as appellant states the case, to transfer to appellant's son for appellant's benefit all evidences of debt held by it against Beall & Coston. October 16, 1897, the Lehman-Durr Company filed their bill in the chancery court of Crenshaw against J. W. Beall and T. W. Coston, averring that the note of April 27, 1894, supra, had been transferred to it as collateral security, first, for the payment of an indebtedness of Beall & Coston, and, secondly, for the payment of an individual indebtedness of J. W. Beall, that said note was unpaid, and praying that the property here in suit be sold to satisfy the vendor's lien which it claimed. It was further averred that the Savannah Guano Company, then in possession, claimed an interest in the property, and it was made a party defendant. Pending that cause, the Lehman-Durr Company, July 19, 1898, filed in the chancery court of Cren-shaw another bill against the appellant and his children, averring that appellant's notes for $3,733.71 remained unpaid, and praying that the conveyance of his lands, which appellant had made to his children, be set aside and the lands subjected to the payment of the notes. Appellant in this last-mentioned cause, September 16, 1901, filed an amended cross-bill, in which he recited the transaction in which he had executed his notes, averring that the Lehman-Durr Company, in consideration thereof had agreed to transfer and assign to him the $7,500 note herein question, together with all collaterals held for the security of said note, and did transfer and assign to him "certain notes, accounts and evidences of debt due or to become due to said Beall & Coston," held by the company as collateral to the indebtedness of Beall & Coston, but not the $7,500 note aforesaid; that the Lehman-Durr Company falsely represented that said note was held by it as collateral security for the individual indebtedness of J. W. Beall, but not as security for the indebtedness of Beall & Coston, and that, relying upon that representation he had executed the note upon which he was sued. Further, appellant in his cross-bill averred that the Lehman-Durr Company on its bill of October 16, 1897, had obtained a decree condemning the lots in question to the satisfaction of its alleged vendor's lien. The prayer of appellant's cross-bill was that his notes for $3,733.71 be canceled, or that the $7,500 note be transferred to him on payment of the notes for $3,733.71, or that the Lehman-Durr Company be required first to exhaust the security of the said $7,500 note and apply the proceeds to the satisfaction of his notes before proceeding further against him. There was a decree in that cause which was reviewed in 147 Ala. 472, 41 South. 750.

[2, 3] Appellant in the present cause is content to dispose of the litigation commenced on July 19, 1898, by saying that thereby he got a decree settling his right to the note for $7,500, citing Folmar v. Lehman-Durr Co., 147 Ala. 472, 41 South. 750. That would be a highly important statement, if true. It would establish his legal and equitable right to the note formally transferred to him by Weil on April 23, 1914. But the decree in that cause established no such ownership in appellant. Notwithstanding the chancellor had sustained a demurrer to the present appellant's cross-bill in that case, he was of opinion, and so stated, that the cross-bill was incapable of amendment, and that he would consider it as stricken, and proceed to a final decree on the pleadings and evidence, which had been taken without waiting to afford an opportunity to amend, citing Kilgore v. Redmill, 121 Ala. 485, 25 South. 766. And so he did. It is true that the opinion of the court on the appeal which

followed speaks of the effect of the evidence; but its statement of the effect of its ruling was in this language:

"This case will therefore be reversed, in order that the chancery court may require the complainant [the Lehman-Durr Company] to give the respondent Geo. A. Folmar the benefit of said collateral by requiring it to exhaust the $7,500 before collecting from him any part of the debt of Beall & Coston that is included in the amount claimed under the original bill."

The further history of the cross-bill in that cause is not shown by the record in this. If there were further proceedings, we can only assume that they were had in accordance with the opinion and decree of this court. Whatever else the court, may have decreed, it could not cancel the note which appellant had executed without ipso facto destroying his alleged right to the note for $7,500, for if the contract of compromise and settlement between appellant and the Lehman-Durr Company was to be rescinded at all, then on inflexible principle it must have been rescinded in toto. Nor could the court, on the evidence, have decreed a transfer of the $7,500 note to appellant. The evidence, including that of appellant, is plain to the effect that the $7,500 note was the subject of consideration between the parties to the settlement, that appellant was given to understand that he could not have it among the collateral securities then delivered to him, and that appellant contracted upon the express theory and basis that he was not to get it. In general, of course, the transfer of a note passes to the transferee the right of the transferor in collateral held for its security, and the mere fact that the collateral is not delivered to the transferee will not deprive the latter of his interest, because the original pledgee, after selling the note, holds the collateral as agent or trustee for his transferee. But, as was said in Alabama Warehouse Co. v. Jones, 62 Ala. 550, the pledgee of collateral carves out by his own contract security for his own protection, and while he cannot hold an interest in collateral, pledged to secure a certain debt only, after he has disposed of the debt, it by no means follows that he must dispose of the collateral along with the debt, even though he holds it to secure no other debt; for while the rule in question affects property rights as between the collateral debtor and the transferee, it does not impair the ordinary rules of contract law. Hence a more complete statement of the rule is that, the security being the mere incident of the indebtedness, an assignment of the debt passes the title in the pledge to the assignee of the debt, unless the parties agree otherwise. Hawkins v. Fourth Nat. Bank, 150 Ind. 117, 49 N. E. 957, where adjudicated cases and leading text-writers are cited. It follows,

therefore, that the Lehman-Durr Company's retention of the $7,500 note, in the circumstances, offended against no right of appellant, and that it could not be decreed to him without the judicial invention of a contract for the parties.

[4] And it is certain at any rate that there is no proof of a decree purporting to vest in this appellant any right or title in or to the $7,500 note, and that the Lehman-Durr Company continued thereafter to claim and exercise ownership of that note. The ruling in Folmar v. Lehman-Durr Co., 147 Ala. 472, 41 South. 750, though it be accepted as a decree, had no effect upon the company's title to the note; its only effect was to limit the right of the company to prosecute its action against this appellant on his notes for $3,733.71, requiring the company first to exhaust its remedy against the note for $7,500. That was the utmost relief possible under the opinion, and perhaps the utmost relief conceivable in equity.

[5] Reverting now to the bill filed by the Lehman-Durr Company on October 16, 1897, to enforce a vendor's lien on the property here in question for the $7,500 note, there was on November 11, 1899, a decree in accordance with the prayer and an order for a reference to ascertain the amount due to the Lehman-Durr Company on the note. But that decree of reference was never excuted, and on July 21, 1905, that cause, so far as the court was concerned, was brought to a conclusion by a notation on the docket, "This cause is settled as per agreement on file." The agreement has disappeared along with the rest of the file, and of the agreement at least no record was made. Appellant in argument has treated this as a circumstance of suspicion against appellees and their witness J. W. Beall. The intimation is that Beall, or some one else interested in the defense, abstracted the agreement from the file in order to conceal its contents. It is not necessary to charge any one with an unlawful abstraction of the agreement; but it does seem that, if the disappearance of the paper must be attributed to any of the parties, or any one in their interest, as a speculation founded upon the theory that human conduct is influenced by interest, we would need, in giving direction to suspicion, to know the purport of the document. As the matter stands, it can only be supposed that the agreement had some reasonable relevancy to the issue in controversy, and measurably reflected the circumstances out of which it arose. In that case the Lehman-Durr Company had a decree declaring a vendor's lien, and the only open question was as to the amount of it. Appellant was not a party to that cause, nor was he a party to the agreement by which it was settled, nor is the agreement pleaded as res judicata. But

the title to the $7,500 note was in the Lehman-Durr Company—a fact that had not been denied by this appellant in his cross-bill in the cause of the Lehman-Durr Co. v. Folmar and his children, but which, rather, he, in one aspect of his bill at least, recognized by necessary legal inference and insisted upon as a basis of relief—and the parties to the cause in which the agreement was made were competent to dispose of the vendor's lien in question, and, under the opinion which this appellant had from this court in Folmar v. Lehman-Durr Co., 147 Ala. 472, 41 South. 750, it was incumbent on the Lehman-Durr Company to foreclose the lien before it could proceed against appellant for his indebtedness to it, which, it seems, he still owes. The principal witness for appellees has involved himself in some statements which must be accepted with reserve. He, however, is not singular in that respect. Still, upon the evidence as a whole we find no reason to doubt that in satisfaction of the vendor's lien there asserted the Savannah Guano Company, which was in possession claiming the property under a mortgage and by purchase at a sale under execution issued out of the federal court against Beall & Coston, paid the Lehman-Durr Company $1,500, and that afterwards J. W. Beall paid the Guano Company $3,000 to cover the amount paid to the Lehman-Durr Company, and as well the amount he owed the Guano Company, in consideration whereof he became again the owner of the property which he afterwards conveyed to Walker and King, through whom these appellees claim. No attack is made upon the good faith of that litigation or the settlement thereof, and it seems necessary to hold that as a result the Lehman-Durr Company thereafter had no right, title, or interest in the $7,500 note or the lien for security of the same which it could assign to any one.

[6, 7] In Beall v. Folmar, 75 South. 172,[1] it was ruled, on demurrer, that the averments of the bill in this cause did not show appellant's cause of action to be barred by lapse of time. In the evidence it appeared that Beall and those claiming under him, including these appellees, have been continuously in possession in the active exercise of ownership since the date of the conveyance and note upon which the claim of a vendor's lien is based, nearly 20 years prior to the filing of the bill in this cause. It may be that this possession did not measure up to the rule which holds that "Where the original possession by the holder of land is in privity with the title of the rightful owner, in order to enable such holder to avail himself of the statute of limitations, nothing short of an open and explicit disavowal and disclaimer of holding under that title, and assertion of title in himself brought home to the other party, will satisfy the law" (Zeller's Lessee v. Eckhert, 4 How. 289, 11 L. Ed. 979), though it is conceded that, if the mortgagor or vendor in possession sells to a third person, as did the Guano Company in this case, he may hold adversely to the mortgagee or vendee, since every trustee may repudiate his trust. Evans v. Faircloth-Byrd Mer. Co., 165 Ala. 176, 51 South. 785, 21 Ann. Cas. 1164. Still, in the settlement in which appellant gave his notes for $3,733.71, in 1896, he had notice that the Lehman-Durr Company held the $7,500 note as security for the indebtedness due to it by Beall & Coston, and was asserting a vendor's lien on that account in its bill filed in 1897, and yet, aside from his cross-bill, to which we have referred in connection with the opinion in Folmar v. Lehman-Durr Co., 147 Ala. 472, 41 South. 750, and which afforded him no relief except as stated above, he took no measures to enforce his alleged claim until the opportunity presented itself to pick up the note in the hands of Weil, after which he filed this bill. Not only did appellant not have any equitable interest in the note, but this long delay in the assertion of right tends strongly to support the inference that his claim is an afterthought. Phillips v. Adams, 78 Ala. 225. He excuses this delay on the ground that he was awaiting the litigation over the note; but that, so far from being an excuse for delay, should have been a stimulus to action.

It results from the foregoing considerations that there existed no interest in the note for $7,500 by virtue of which Weil, or the Lehman-Durr Company before him, could have enforced a vendor's lien. Weil's act of assignment, therefore, vested no such right in appellant. The ultimate fact then appears to be that, even though appellant supposed some virtue still to inhere in the note, or may in fact have so inhered, the transfer was champertous—evidenced a speculation by appellant in which he ventured nothing. However, he got no more than his money's worth.

The chancellor's decree dismissing appellant's bill is affirmed.

ANDERSON, C. J., and GARDNER and BROWN, JJ., concur.

---

[1] 199 Ala. 596.