180 So. 269

## LITTLE v. MONTGOMERY.

### 8 Div. 856.

Supreme Court of Alabama.

Feb. 10, 1938.

Rehearing Denied. April 21, 1938.

W. L. Chenault, of Russellville, for appellant.

616

R. L. Almon, of Moulton, and Henry D. Jones, of Florence, for appellee.

**KNIGHT, Justice.**

Bill by appellant, complainant in the court below, to establish and enforce a vendor's lien. From a decree in favor of respondent, this appeal is prosecuted. No question is presented here on the sufficiency of the bill.

The question here presented relates solely to the findings of the court upon the evidence, all of which was taken by deposition. In this situation, we are required to weigh the evidence and render such judgment as we may deem just, and in arriving at our conclusions no weight can be given the decision of the trial judge upon the facts. Code, § 10276; Fannin v. Trotter, 215 Ala. 17, 109 So. 102; McLeod v. McLeod, 145 Ala. 269, 40 So. 414, 117 Am.St.Rep. 41; Wade v. Miller, 208 Ala. 264, 93 So. 905.

It appears without dispute in the evidence that Mrs. Emma Little, otherwise known as Mrs. E. L. Little, and her seven children owned the lands described in the amended bill; that on January 10, 1920, Mrs. Little and her children, along with their wives and husbands, conveyed the lands described in the amended bill to the respondent, Will J. Montgomery, who was a son-in-law of Mrs. Little; that the purchase price of said lands as recited in the deed was $8,000, $1,000 of which was to be paid to each of the seven children, and $1,000 to Mrs. Little for her interest in the land. And it further appears without dispute that Montgomery paid the children $7,000 of the purchase price, which it was agreed they should be paid. How-

ever, he did not pay Mrs. Little in cash her part of the purchase price of the lands, but gave her a note, executed by himself and wife, for $1,080, the added amount being interest for one year on the note.

After the purchase of this property by the respondent, Mrs. Little, the mother-in-law, made her home with the respondent and his wife for a number of years, in fact, up until her death. During the years she made visits to her other children, and spent some time with them each year.

It further appears, without conflict, from the evidence that the respondent never saw the note which he and his wife had given Mrs. Little, from the time of its execution until after Mrs. Little's death; nor did he at any time pay her the amount of the note, or any interest thereon, unless it may be said that she owed the respondent and his wife for board, and her indebtedness therefor to respondent should be credited upon the note. He paid no money on the note.

There is no evidence of any express contract or agreement between Mrs. Little and the respondent and wife that the respondent would charge, and that Mrs. Little would pay, any board. There is some evidence in the record that Mrs. Little said, in effect, that the respondent's indebtedness to her would not be any greater than it originally was, as she was making her home with Mr. Montgomery, and she would not charge him and her daughter with interest on the note. Aside from the fact that Mrs. Little made her home with respondent and his wife for the greater part of the eleven years she lived after the execution of the note, there is absolutely nothing in the evidence that would tend in the remotest degree to support even an inference that the respondent and his wife made any charge for the board of Mrs. Little.

■ After the suit was brought, the respondent testified that he found the note in question in an old trunk in his house, but could not say whether it was his wife's trunk or Mrs. Little's. In this connection, he undertook to testify to some things that his wife had told him before her death, and after the death of Mrs. Little. The testimony as to alleged statements of the wife was, of course, incompetent.

The note, when produced by Montgomery, had endorsed on it the words "Paid in full. E. L. Little—1922." There was much testimony as to whether or not these words were in the handwriting of Mrs. Little, but we are fully convinced by the evidence that the endorsement was not made by Mrs. Little. Certain it is the note had not then, 1922, been paid. It is also certain that Mrs. Little never delivered the note, so endorsed, to the respondent. And we are also far from being satisfied by the evidence that Mrs. Little ever, in fact, delivered the note to respondent's wife.

■ The note was given to Mrs. Little as part payment of the land in question, and the burden of proving payment, or matters in discharge of the obligation, rested upon the respondent. For the unpaid purchase money, Mrs. Little had a vendor's lien upon the land, which was not impaired or destroyed, because an action at law for the purchase money may be barred by the statute of limitations. Code 1923, § 8944. The legal presumption of payment, from mere lapse of time, could not arise until after the expiration of twenty years, without the payment of interest, or any recognition of the indebtedness on the part of the debtor. Hood, Adm'r, et al. v. Hammond, 128 Ala. 569, 30 So. 540, 86 Am.St.Rep. 159; Downing v. Coffey, 231 Ala. 678, 166 So. 414; Folmar v. Beall et al., 204 Ala. 298, 85 So. 540; Mitchell v. Bottoms et al., 233 Ala. 107, 170 So. 220; Phillips v. Adams, 78 Ala. 225.

The evidence shows that the relations between Mrs. Little and the respondent were always most pleasant; that the respondent and his wife were at all times most kind to her, and she was regarded as a member of the family, living with them as a member of the household.

■■ Under such circumstances, as to articles furnished, or services rendered by parent to child or child to parent, or those occupying such a relationship, the presumption arises that the articles furnished or services rendered are gratuitous; but, of course, this "presumption may be rebutted by proof of an express contract, or a contract implied in fact, that is, established by facts and circumstances which show that at the time the services were rendered both parties contemplated, or intended, a pecuniary compensation therefor." Lowery et al. v. Pritchett, 204 Ala. 328, 85 So. 531, 532; Butler v. Kent, 152 Ala. 594, 44 So. 863.

In the case of Lowery et al. v. Pritchett, supra, it was said: "In other words, as we understand the rule, when this relation-

618

ship exists there is no presumption of an implied promise to pay as would be the case between those who do not occupy such a relationship, and there must be either proof of an express agreement to pay or of such facts and circumstances that would establish an implied one to do so, and which said proof should be in addition to or independent of the mere proof of furnishing the articles or rendering the service." ,

 And in our last referred to case it was expressly held that the rules applied as to articles furnished, or services rendered, for a mother-in-law by the son-in-law, when the former was a member of the latter's family. This rule seems to be abundantly supported by the authorities. 11 R.C.L. § 233, p. 209; Young's Estate, 148 Pa. 575, 24 A. 124; Hinkle v. Sage, 67 Ohio St. 256, 65 N.E. 999; King's Adm'r v. Kelly, 28 Ind. 89; Patterson v. Carter, 147 Ala. 522, 41 So. 133.

A careful consideration of the evidence, in the light of the above-noted rules, forces us to the conclusion that the respondent wholly failed to establish either an express or implied contract on the part of Mrs. Little to pay the respondent board, or for any services claimed to have been rendered her. Nor does the evidence afford a reasonable inference that it was the intention of the respondent to charge Mrs. Little board. At most, it shows that Mrs. Little refrained from the collection of interest on her note because she did not care to require this to be paid while she was a member of the respondent's household. This was likewise a gratuity on her part.

The foregoing serves to show that we are not in accord with the conclusions of the trial judge. Our opinion is that complainant was entitled to a decree, establishing and declaring a vendor's lien in his favor upon the lands described in the bill, for the amount of the note, with interest thereon from the date of Mrs. Little's death, and a reasonable attorney's fee, which, it was agreed, should be 15 per cent. on the amount found to be due, if the court should hold that complainant was entitled to a decree in the cause, and that an attorney's fee was recoverable. The note provided for a reasonable attorney's fee. 66 C.J. p. 1232. In reaching this conclusion we have considered only competent and legal evidence.

The decree of the circuit court must therefore be reversed, and a decree here

entered ascertaining and adjudging the amount of complainant's debt, including interest, and a reasonable attorney's fee to be $1,670.40; and a vendor's lien is hereby established and declared to exist in favor of complainant, on the lands described in the amended bill, as security for the amount of said debt, as here ascertained, and fixed, and the cost in this court and the court below.

It is ordered that the respondent be and he is allowed 90 days from this date, within which to pay said indebtedness, and the cost in this cause, and failing in which the register of the circuit court of Lawrence county is directed to sell the lands described in the amended bill, during the legal hours of sale at public auction, for cash, before the present courthouse door of Lawrence county, in Moulton, Ala., after giving notice of the time, terms, and place of said sale, with a description of the property, by advertisement in some newspaper published in Moulton, in said county, for four consecutive weeks prior to the date of said sale. The proceeds of said sale shall be applied (1) to the payment of the cost of court; (2) to the amount due the complainant; and (3) the surplus to be paid over to the respondent.

The cause is remanded to the circuit court, with directions to enforce the foregoing decree; and for such orders and decrees as may be necessary to carry out the decree here rendered.

Reversed, rendered, and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.